[No. G041051. Fourth Dist., Div. Three. Nov. 19, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
RODNEY BELL, Defendant and Appellant.

## COUNSEL

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Jeffrey J. Koch, Pamela Ratner Sobeck and Scott Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**IKOLA, J.**—A jury convicted defendant Rodney Bell of evading a police officer while driving recklessly, as well as kidnapping and other offenses. On appeal, he challenges his kidnapping conviction, alleging jury instructional error. We agree with defendant that the court failed to give the jury complete instructions on simple kidnapping and therefore his kidnapping conviction must be reversed.[1] In doing so, we also find fault with the wording of CALCRIM No. 1215, because it fails to capture accurately the holding of *People v. Martinez* (1999) 20 Cal.4th 225 [83 Cal.Rptr.2d 533, 973 P.2d 512] (*Martinez*).

### FACTS

Arna Jennings was married to defendant for about four and one half years. Their relationship ended in late 2006.

---

[1] Defendant also contends his sentence on evading a police officer while driving recklessly must be stayed pursuant to Penal Code section 654. Because we reverse the kidnapping conviction for instructional error, we need not address defendant's Penal Code section 654 argument.

All further statutory references are to the Penal Code unless otherwise stated.

On March 8, 2007, Jennings arranged to meet defendant at 1:00 p.m. at her workplace on Amerige Avenue in Fullerton, to repay him some money she owed him. Jennings suggested to the Signal Hill police that defendant, who was on parole, could be arrested that day near her office. The Signal Hill Police Department notified the Fullerton Police Department that a parolee with "an outstanding parole violation warrant" and who was "possibly armed" would be coming to Jennings's office in Fullerton.

Defendant arrived at Jennings's office at 12:15 p.m., earlier than expected. They went to an automated teller machine where Jennings withdrew the money she owed him, and then they went to lunch. On the drive back to Jennings's office, defendant "verbally threatened" Jennings's boyfriend. Jennings told defendant she was "not going to listen to [his] foolishness."

They arrived at Jennings's office and defendant parked on Amerige Avenue. They continued their disagreement.

Officer Oliveras, a Fullerton detective in plain clothes, was parked in front of defendant's vehicle. Oliveras planned to back up his vehicle as close as possible to defendant's car, while Oliveras's partner, Detective Cicinelli, pulled "his truck in behind" in order to "box" in defendant. The officers intended to jump out, identify themselves, and take defendant into custody. But when Oliveras exited his vehicle, he realized there was about a six- to 10-foot gap between his vehicle and defendant's.

Oliveras, clad in a bulletproof vest, pulled out his gun, identified himself as an officer, and yelled, "Stop, put your hands up." Jennings, who had opened the car door and was about to get out, could not see the word "POLICE" on Oliveras's vest and screamed, "Oh, my God." Defendant looked straight at Oliveras, looked back, "put his car in reverse and slammed into Detective Cicinelli's truck, which was now basically at his back bumper." "He turned back around, looked at" Oliveras, accelerated with his "tires screeching," and "came right at" Oliveras. Oliveras moved away to avoid being possibly hit. Defendant made a "very fast accelerated U-turn" and fled the opposite way down the street. Jennings screamed, "Oh, my God, what are you doing? Stop."

Jennings offered two different versions of what happened next. She recounted one version in a police interview on the day of the incident, and the other on direct examination at trial. At trial, she testified that "in a matter of feet," defendant stopped at a red light, put his arm in front of her for her safety, and let her out. But on March 8, 2007, when questioned at the scene, Jennings told an officer she asked "defendant to stop the car about three times," but he said, "No." Shortly "after the U-turn was completed," he "put

his right arm across her to restrain her." Jennings was scared. Under both versions, defendant stopped at an intersection about 70 yards away and let Jennings out of the vehicle.

Alone in the car, defendant led the police on a chase during which he went through stop signs and a red light without stopping, and twice went onto the wrong side of the street so that approaching vehicles had to move over to avoid collision. He reached speeds of between 70 to 80 miles per hour.

An officer in a patrol vehicle performed a technique called "the pit maneuver," where a police vehicle accelerates into the rear side of the fleeing vehicle, pushing it and causing it "to spin out of control." In the process, the patrol vehicle suffered four flat tires.

An officer in a different vehicle then tried to hit defendant's rear passenger side "to again spin him out [to] stop the pursuit." Defendant's car fishtailed and "collided with three different vehicles." Defendant continued to accelerate and push one of the vehicles. Defendant jumped out and fled into a restaurant where two other officers wrestled him to the ground and handcuffed him.

An information charged defendant with evading a police officer while driving recklessly (Veh. Code, § 2800.2); resisting and obstructing an officer (Pen. Code, § 148, subd. (a)(1)); two counts of aggravated assault on a peace officer (Pen. Code, § 245, subd. (c)); simple kidnapping (Pen. Code, § 207, subd. (a)); and hit and run with property damage (Veh. Code, § 20002, subd. (a)). The information alleged defendant had suffered a prior strike conviction (§§ 667, subds. (d), (e)(1), 1170.12, subds. (b), (c)(1)); a prior serious felony conviction (§ 667, subd. (a)(1)); and served three prior prison terms within the meaning of section 667.5, subdivisions (a) and (b).

The jury convicted defendant of evading a police officer while driving recklessly; resisting and obstructing an officer; kidnapping; and hit and run with property damage. The jury found defendant not guilty of the two counts of aggravated assault on a peace officer.

The court sentenced defendant to a total term of 11 years, consisting of (1) a three-year low term (doubled to a six-year term pursuant to §§ 667, subds. (d), (e)(1) & 1170.12, subds. (b), (c)(1)) for kidnapping, plus a five-year consecutive term under section 667, subdivision (a)(1); and (2) a concurrent sentence of the midterm of two years (doubled to four years) for evading a police officer while driving recklessly. The court exercised its discretion to strike the section 667.5, subdivisions (a) and (b) enhancements. On the misdemeanor counts, the court sentenced defendant to time served, concurrent with all other sentences.

## DISCUSSION

*The Court Erred by Failing to Instruct the Jury on a Defendant's Incidental Movement of an Alleged Kidnapping Victim*

The court charged the jury with CALCRIM No. 1215 (the standard instruction for simple kidnapping), but denied defendant's request to include a bracketed portion of the instruction. The bracketed passage would have prohibited the jury from convicting defendant of simple kidnapping if his movement of Jennings was merely incidental to his reckless flight from the police. The bracketed language (the "incidental movement paragraph") reads: "[The defendant is also charged in Count _____ with _____ <insert crime>. In order for the defendant to be guilty of kidnapping, the other person must be moved or made to move a distance beyond that merely incidental to the commission of _____ <insert crime>.]"

Defendant contends he was charged with the "associated crime" of reckless evasion and therefore the court should have instructed the jury with the incidental movement paragraph. The People counter "there was no *associated crime* charged in this case" nor any evidence defendant intended the movement of Jennings "to facilitate the additional crime of evading police." They point out defendant "was *not* charged with kidnapping for purposes of committing an evasion." They argue the "two crimes stood on their own separately," with no relationship between them "other than the two crimes occurred simultaneously."

We hold the jury should have been instructed with regard to movement incidental to the crime of reckless evasion. But we also hold CALCRIM No. 1215, as currently worded, does not accurately reflect the law of simple kidnapping as explained in *Martinez, supra*, 20 Cal.4th 225, 232. As currently worded, CALCRIM No. 1215 has the potential to mislead the jury. Accordingly, we will reverse the judgment as to the simple kidnapping count with instructions to reword CALCRIM No. 1215 in any retrial.

█ A trial court bears a sua sponte duty to instruct the jury on the essential elements of an offense (*People v. Flood* (1998) 18 Cal.4th 470, 504 [76 Cal.Rptr.2d 180, 957 P.2d 869]), and " 'on the general principles of law governing the case,' " i.e., " ' "those principles of law *commonly* or closely and openly connected with the facts of the case before the court" ' " (*People v. Michaels* (2002) 28 Cal.4th 486, 529–530 [122 Cal.Rptr.2d 285, 49 P.3d 1032]). A "criminal defendant is entitled to adequate instructions on the defense theory of the case" if supported by the law and evidence. (*Conde v. Henry* (9th Cir. 1999) 198 F.3d 734, 739.) "[T]he general rule is that a trial court may refuse a proffered instruction if it is an incorrect statement of law,"

argumentative, duplicative, or confusing. (*People v. Gurule* (2002) 28 Cal.4th 557, 659 [123 Cal.Rptr.2d 345, 51 P.3d 224].)

"An appellate court reviews the wording of a jury instruction de novo" (*People v. O'Dell* (2007) 153 Cal.App.4th 1569, 1574 [64 Cal.Rptr.3d 116]), and determines whether "the instructions are complete and correctly state the law" (*People v. Andrade* (2000) 85 Cal.App.4th 579, 585 [102 Cal.Rptr.2d 254]).

 In order to assess defendant's instructional error claim, we summarize the relevant law on simple kidnapping.[2] Defendant was convicted of violating section 207, subdivision (a), which defines simple kidnapping. (*People v. Morgan* (2007) 42 Cal.4th 593, 605 [67 Cal.Rptr.3d 753, 170 P.3d 129].) Under that statute, a "person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping." (§ 207, subd. (a).) Thus, to prove this crime, the prosecution must generally "prove three elements: (1) a person was unlawfully moved by the use of physical force or fear; (2) the movement was without the person's consent; and (3) the movement of the person was for a substantial distance." (*People v. Jones* (2003) 108 Cal.App.4th 455, 462 [133 Cal.Rptr.2d 358].) This last element, i.e., that the victim be moved a substantial distance, is called the "asportation" element. (*People v. Rayford* (1994) 9 Cal.4th 1, 14 [36 Cal.Rptr.2d 317, 884 P.2d 1369].)

Both simple kidnapping and aggravated kidnapping (except kidnapping for ransom or extortion) have an asportation element. (*People v. Rayford, supra,* 9 Cal.4th at p. 14.) But the standard for proving the asportation element of simple kidnapping is not the same as that for aggravated kidnapping.

---

[2] Simple kidnapping is "a general intent crime" (*People v. Moya* (1992) 4 Cal.App.4th 912, 916 [6 Cal.Rptr.2d 323]) that "arises independently of the commission or attempted commission of any other offense" (*Martinez, supra,* 20 Cal.4th at p. 232). In contrast, aggravated kidnapping is committed with the specific intent to commit extortion, robbery, certain sex offenses, or carjacking. (§§ 209, 209.5; 1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Crimes Against the Person, § 256, p. 866.)

CALCRIM No. 1215 as read to the jury provided in relevant part as follows: "To prove that the defendant is guilty of [simple kidnapping], the People must prove that 1, the defendant took, held, or detained another person by using force or by instilling reasonable fear. 2, using that force or fear, the defendant moved the other person . . . a substantial distance. 3, the other person did not consent to the movement. And 4, the defendant did not actually and reasonably believe that the other person consented to the movement. [¶] . . . Substantial distance means more than a slight or trivial distance. In deciding whether the distance was substantial, you must consider all the circumstances relating to the movement. Thus, in addition to considering the actual distance moved, you may also consider other factors such as whether the movement increased the risk of physical or psychological harm, increased the danger of a foreseeable escape attempt, [or] gave the attacker a greater opportunity to commit additional crimes . . . ."

The statutes for aggravated kidnapping for robbery, sexual crimes or carjacking set forth the standard for asportation for those offenses. (§§ 209, subd. (b), 209.5.) The asportation element for aggravated kidnapping has two prongs: "[A]ggravated kidnapping requires movement of the victim [(1)] that is not merely incidental to the commission of the underlying crime and [(2)] that increases the risk of harm to the victim over and above that necessarily present in the underlying crime itself." (*Martinez, supra,* 20 Cal.4th at p. 232; §§ 209, subd. (b), 209.5.) "The two prongs of aggravated kidnapping are not distinct, but interrelated, because a trier of fact cannot consider the significance of the victim's changed environment without also considering whether that change resulted in an increase in the risk of harm to the victim." (*Martinez,* at p. 236.)

In contrast, the "asportation requirement for simple kidnapping has historically been less clear" (*Martinez, supra,* 20 Cal.4th at p. 233), and is not established by statute. In 1999, *Martinez* changed the standard previously established in *People v. Caudillo* (1978) 21 Cal.3d 562 [146 Cal.Rptr. 859, 580 P.2d 274] (*Caudillo*), and *People v. Stanworth* (1974) 11 Cal.3d 588 [114 Cal.Rptr. 250, 522 P.2d 1058] (*Stanworth*). Under the *Caudillo/Stanworth* standard, the "actual distance" the victim was moved was the sole factor for determining whether the evidence showed asportation for purposes of simple kidnapping. (*Caudillo,* at p. 574; *Stanworth,* at p. 603.) The rationale was that, because simple kidnapping entails no underlying crime, "the victim's movements cannot be evaluated in the light of a standard which makes reference to the commission of another crime." (*Stanworth,* at p. 600.)

*Martinez* overruled *Caudillo* to the extent it "prohibited consideration of factors other than actual distance" (*Martinez, supra,* 20 Cal.4th at p. 237, fn. 6) because "limiting a trier of fact's consideration to a particular distance is rigid and arbitrary, and ultimately unworkable" (*id.* at p. 236). *Martinez* established a new asportation standard for simple kidnapping—one that took into account "the 'scope and nature' of the movement . . . , and any increased risk of harm"—thereby bringing the standard closer to the one for aggravated kidnapping. (*Ibid.*) *Martinez* required a jury to "consider the totality of the circumstances" in deciding whether a victim's movement is substantial. (*Id.* at p. 237.) "Thus, in a case *where the evidence permitted,* the jury might properly consider not only the actual distance the victim is moved, but also such factors as whether that movement increased the risk of harm above that which existed prior to the asportation, decreased the likelihood of detection, and increased both the danger inherent in a victim's foreseeable attempts to escape and the attacker's enhanced opportunity to commit additional crimes." (*Ibid.,* italics added.) But *Martinez* clarified that, unlike the asportation element of aggravated kidnapping, the standard for simple kidnapping does *not* require a finding of "an increase in harm, or any other contextual factors," so long as the evidence shows the victim was moved a substantial distance.

(*Ibid.*) Here, CALCRIM No. 1215, as read to the jury, properly instructed the panel to consider any increase in the risk of harm and other "contextual factors" in determining whether the movement was substantial.

*Martinez* identified another factor for determining the movement's substantiality—a factor the trial court here concluded did not apply. *Martinez, supra,* 20 Cal.4th at pages 237–238 held: "In addition, in a case involving an associated crime, the jury should be instructed to consider whether the distance a victim was moved was incidental to the commission of that crime in determining the movement's substantiality. Contrary to our language in *Caudillo* and *Stanworth,* such consideration is relevant to determining whether more than one crime has been committed, and is amply supported by the case law. (See *In re Earley* [(1975)] 14 Cal.3d [122,] 129, fn. 9 [120 Cal.Rptr. 881, 534 P.2d 721] ['When an "associated crime" *is* involved, there can be no violation of section 207 unless the asportation is more than incidental to the commission of that crime.']; *People* v. *Daniels* [(1969)] 71 Cal.2d [1119,] 1130–1131 [80 Cal.Rptr. 897, 459 P.2d 225] [movements incidental to rapes and robberies insufficient evidence of asportation]; *Cotton* v. *Superior Court* [(1961)] 56 Cal.2d [459,] 465 [15 Cal.Rptr. 65, 364 P.2d 241] [where the movement is merely incidental to the alleged assault and rioting, section 207 does not apply]; *People* v. *Magana* (1991) 230 Cal.App.3d 1117, 1121 [281 Cal.Rptr. 338] [actual distance of at least one-half mile plus lengthy walk in park not merely incidental to rape].)" The issue of what constitutes an "associated crime" is squarely presented in the instant case.

In announcing the new asportation standard for simple kidnapping, *Martinez* relied on cases that involved both aggravated and simple kidnapping. In each of the cases cited by the *Martinez* court, the defendant had intended to commit another crime, and had moved the victim in the course of committing the other intended crime.[3] (*In re Earley, supra,* 14 Cal.3d at p. 125 [defendant convicted of kidnapping for the purpose of robbery]; *People v. Daniels, supra,* 71 Cal.2d at pp. 1130–1131 [defendants' "intent was to commit robberies and rapes, and the brief movements which they compelled their victims to perform were solely to facilitate such crimes"]; *Cotton, supra,* 56 Cal.2d at p. 464 ["All 'asportation' in the instant case would appear to be only incidental to the intended assault and rioting."]; *People v. Magana, supra,* 230 Cal.App.3d at p. 1121 [asportation not merely incidental to intended rapes].)

---

[3] Our reference to the "intended crime" does not necessarily mean a crime having a specific intent element. Of course, most of the decided cases are cases of aggravated kidnapping, involving, by their nature, a defendant's specific intent to commit *another* crime such as rape or robbery. But *Cotton v. Superior Court, supra,* 56 Cal.2d 459 (*Cotton*), was a simple kidnapping case involving assault and riot, both of which are general intent crimes. (*People v. Williams* (2001) 26 Cal.4th 779, 788 [111 Cal.Rptr.2d 114, 29 P.3d 197] [assault]; § 404, subd. (a) [crime of riot does not contain a specific intent element].)

Here, the trial court reviewed the cases cited by counsel and concluded it would *not* instruct the jury with the incidental movement paragraph of CALCRIM No. 1215. The court reasoned that a crime is *associated* with simple kidnapping only when the two offenses are "necessarily and ordinarily related." The court stated, "I just don't think that the evading is necessarily and ordinarily related to kidnapping or vice versa."

Perhaps the court reached its "necessarily and ordinarily related" conclusion based on certain language in *Cotton* wherein the court noted, "[T]he only movements that occurred were those *natural* in a riot or assault." (*Cotton, supra*, 56 Cal.2d at p. 464, italics added.) We view this language differently; the *Cotton* court was merely commenting on the specific evidence in the case before it. During that *particular* riot and assault, the defendants chased one victim into barracks, pushed another victim toward doors, and pulled a third victim out of a toilet and dragged him about 15 feet. But the crimes of assault and riot do not require any movement of a victim. Nor do these crimes even require a touching of the victim. (See § 240 ["An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."]; § 404, subd. (a) ["Any use of force or violence, disturbing the public peace, or any threat to use force or violence, if accompanied by immediate power of execution, by two or more persons acting together, and without authority of law, is a riot."].)

Thus, it is not true that movement of a victim is *natural* in all crimes of assault or riot, or that movement of a victim is *necessarily and ordinarily related* to crimes of assault and riot. The *Martinez* court must, therefore, have meant something else by its reliance, inter alia, on *Cotton* when it referred to an "associated crime." The "something else" must necessarily be the actual acts undertaken by the defendant in a specific case, not a bare comparison of the elements of the crimes.

The statutes defining the various species of aggravated kidnapping assist in interpreting the meaning of the phrase "associated crime" as used by the *Martinez* court. Section 209, subdivision (b)(2), instructs that a defendant is guilty of kidnapping for robbery, rape, spousal rape, oral copulation or certain other sex crimes, only "if the movement of the victim is beyond that merely incidental to the commission of . . . the *intended underlying offense*." (*Ibid.*, italics added; accord, § 209.5, subd. (b) [defendant guilty of kidnapping for carjacking only if "the movement of the victim is beyond that merely incidental to the commission of the carjacking . . ."].)

■ We draw from the aggravated kidnapping statutes and the decided cases, especially *Cotton, supra*, 56 Cal.2d 459, a simple kidnapping case, that an "associated crime," as that phrase was used by the *Martinez* court, is *any*

criminal act the defendant intends to commit where, in the course of its commission, the defendant also moves a victim by force or fear against his or her will. It is not more complicated than that.

We conclude the evidence here was sufficient to show the relationship between the kidnapping and the evasion meets our test. The evidence supported a finding that defendant intended to evade the police and did so recklessly. And from the evidence, the jury could have found that in the course of the evasion, Jennings was moved by force or fear against her will. Under these facts, the court should have instructed the jury that, in determining whether defendant's movement of Jennings was substantial, they could consider whether the movement was merely incidental to the crime of evasion (as one factor among others). Because defendant's reckless flight from the police was an associated crime to simple kidnapping, the court erred by failing to instruct the jury with regard to the movement's substantiality in relation to the evasion. The court had a sua sponte duty to instruct " 'on the general principles of law governing the case,' " i.e., " ' "those principles of law *commonly* or closely and openly connected with the facts of the case before the court." ' " (*People v. Michaels, supra*, 28 Cal.4th at pp. 529–530.) " Because the court's instruction on the asportation element of simple kidnapping was incomplete, the error violated defendant's right to a correct jury instruction on all the elements of the offense of simple kidnapping.

A trial court's failure to instruct on all elements of an offense is a constitutional error "subject to harmless error analysis under both the California and United States Constitutions." (*People v. Flood, supra*, 18 Cal.4th at p. 475.) Under the federal Constitution, the standard is whether the instructional error was harmless beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824]. (*People v. Flood*, at p. 504.) In determining whether instructional error was harmless, relevant inquiries are whether "the factual question posed by the omitted instruction necessarily was resolved adversely to the defendant under other, properly given instructions." (*Id.* at p. 485.) A reviewing court considers "the specific language challenged, the instructions as a whole[,] and the jury's findings" (*People v. Cain* (1995) 10 Cal.4th 1, 36 [40 Cal.Rptr.2d 481, 892 P.2d 1224]), and counsel's closing arguments to determine whether the instructional error "would have misled a reasonable jury . . . ." (*Id.* at p. 37.)

The error here was prejudicial. The court's failure to charge the jury on the substantiality of the movement in relation to the evasion offense precluded the jurors from considering whether defendant's driving with Jennings in his car was merely incidental to his offense of evading the police. The People point us to no other jury instructions, jury findings or counsel's arguments showing the jurors knew they had to acquit defendant of kidnapping if they

found his movement of Jennings was *not* substantial, taking into account (as one factor among others) whether his movement of Jennings was merely incidental to the evasion. The error was *not* harmless beyond a reasonable doubt.

*CALCRIM No. 1215 Is Misleading*

■ On remand, however, CALCRIM No. 1215 should not be given in its current form. The form instruction, as currently worded, is misleading. As currently phrased, the incidental movement paragraph operates as a threshold or gatekeeper determination of guilt or innocence. It states: "In order for the defendant to be guilty of kidnapping, the other person must be moved or made to move a distance beyond that merely incidental to the commission of [the associated crime]." (CALCRIM No. 1215.) Without further explanation of what distance is "merely incidental" to the associated crime, a jury could easily interpret the instruction to require a jury to acquit a defendant of kidnapping because the movement was compelled "in the course of" committing the associated crime, regardless of the increased risk of danger to the victim, or, for that matter, that the distance was "substantial" by any reasonable measure. That is not what the *Martinez* court held, and if the incidental movement paragraph were to be interpreted in that fashion, it would be an incorrect statement of the law. To the contrary, *Martinez* held: "*In addition*, in a case involving an associated crime, the jury should be instructed to consider whether the distance a victim was moved was incidental to the commission of that crime *in determining the movement's substantiality*." (*Martinez, supra*, 20 Cal.4th at p. 237, italics added.) Put more directly, one of the *additional* factors to be considered *in determining the movement's substantiality* is whether the movement of the victim was for a distance beyond that which was incidental to the commission of an associated crime. Thus, whether the movement was over a distance merely incidental to an associated crime is simply one of several factors to be considered by the jury (when permitted by the evidence) under the "totality of circumstances" test enunciated in *Martinez*. The factor is *not* a separate threshold determinant of guilt or innocence, separated from other considerations bearing on the substantiality of the movement as the current wording of the incidental movement paragraph of CALCRIM No. 1215 now suggests.

Accordingly, in the event the kidnapping charge is retried on remand, and if the evidence at the new trial permits, the incidental movement paragraph should be made a part of the instruction on substantiality within CALCRIM No. 1215 as follows: "*Substantial distance* means more than a slight or trivial distance. In deciding whether the distance was substantial, you must consider all the circumstances relating to the movement. Thus, in addition to considering the actual distance moved, you may also consider other factors such as

whether the [distance the other person was moved was beyond that merely incidental to the commission of the crime of evading a police officer,] whether the movement increased the risk of [physical or psychological] harm, increased the danger of a foreseeable escape attempt, [or] gave the [defendant] a greater opportunity to commit additional crimes."

## DISPOSITION

The judgment is reversed as to the simple kidnapping conviction. The balance of the judgment, not having been challenged on appeal, is affirmed.

O'Leary, Acting P. J., and Aronson, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 24, 2010, S179030. Baxter, J., did not participate therein. Moreno, J., was of the opinion that the petition should be granted.