Filed 2/26/13  P. v. Zamora CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H037159 |
| Plaintiff and Respondent, | (Santa Cruz County Super. Ct. No. WF00306) |
| v. | |
| JOHN ANTHONY ZAMORA, | |
| Defendant and Appellant. | |

A jury convicted defendant John Anthony Zamora of attempted murder, shooting at an occupied vehicle, possession of a firearm by a felon, corporal injury to a cohabitant, kidnapping, false imprisonment, and domestic battery.  It also found true firearm-use, firearm-discharge, and firearm-causing-bodily-injury allegations for purposes of sentence enhancements to the attempted murder and shooting convictions.  And the trial court found true three prior-prison-term allegations for purposes of one-year sentence enhancements.  The trial court sentenced defendant to 38 years to life as follows:  34 years to life for attempted murder (nine years plus 25-years-to-life for firearm-causing-bodily-injury enhancement); stayed five years for shooting; concurrent 16 months for possession; consecutive one year for corporal injury; concurrent three years for kidnapping; stayed 16 months for false imprisonment; stayed 180 days for domestic battery; and consecutive three years for prior prison terms.

On appeal, defendant contends that (1) the trial court erred in instructing the jury on kidnapping, (2) he was wrongly convicted of both kidnapping and false imprisonment,

(3) he was wrongly convicted of both corporal injury and domestic battery, (4) his consecutive one-year sentence for corporal injury constitutes improper multiple punishment (Pen. Code, § 654), and (5) the abstract of judgment does not reflect that the sentences for shooting (but not the enhancements) and false imprisonment were stayed. The People concede defendant's second and fifth contentions and we agree that the concessions are appropriate. We otherwise disagree with defendant. We will therefore modify the judgment by striking the conviction for false imprisonment and affirm the judgment as modified. And we will order the abstract conformed to reflect that the base term sentence for shooting at an occupied vehicle is stayed.

## BACKGROUND

Defendant had an acrimonious, violent relationship with Deleyne Padilla that Padilla ended in August 2007. But on September 16, 2007, defendant's mother drove defendant to Padilla's home on Larkin Valley Road in Watsonville so he could attempt reconciliation. She exited the vehicle, entered the home, and explained to Padilla that defendant wished to speak with her. Padilla agreed to speak with defendant and went with the mother to the vehicle. She sat in the front passenger seat and the mother sat in the driver's seat. Defendant was sitting in the back seat. After conversing with Padilla for several minutes, defendant began to argue with Padilla. Padilla exited the vehicle and began walking away. Defendant then got out, pursued Padilla, grabbed Padilla, and threw her onto the back seat of the vehicle. Padilla "flew across and hit the other . . . passenger door." Defendant got into the back seat and instructed his mother to drive away. The mother drove away, and the two in the back seat began arguing. After concluding that Padilla had been avoiding him, defendant hit Padilla at least three times in the face while the vehicle was on Airport Road crossing a bridge connecting to Highway 1 toward Monterey. He then bit Padilla on the hand. At some point, the mother pulled over and told defendant to stop hitting Padilla. After defendant agreed, she drove to Mesa Village Park on Green Valley Road where defendant exited the vehicle. She

2

then drove Padilla home. Padilla reported the incident to the police, and the investigating officer observed two red and purple bruised eyes, a swollen cheek and nose, and bite marks on her hand.

The above incident formed the basis for the corporal injury, kidnapping, false imprisonment, and domestic battery convictions. The next described incident formed the basis for the attempted murder, vehicle shooting, and firearm possession convictions.

Defendant was in custody until April 2008. After he was released, Padilla went to see him at his home. They talked about reestablishing their relationship and became intimate. They began seeing each other every day. And they began arguing after Padilla discovered that defendant was seeing a woman named Veronica. During one argument in a restaurant, defendant grabbed Padilla's hair, dragged Padilla around the room, pinned Padilla against a wall, and threw a punch near her face. During another argument at a friend's home, defendant pulled out a revolver. On May 21, the two argued over the telephone. Padilla hung up on defendant and refused to answer his subsequent calls and text messages. During the late evening of May 21 and early morning of May 22, Padilla drove her car around back roads with her brother-in-law as a passenger. She told him about her abusive situation and stressful condition. As she returned to her home and drove up a hill on her narrow, one-car, dirt driveway, a second car approached going down the driveway toward Padilla's car. The cars stopped at a bumper-to-bumper distance. Defendant exited the second vehicle with a gun in his hand, ran toward the passenger's side of Padilla's vehicle, pointed the gun into the car, and tried to get inside, but the door was locked. He tried the rear passenger door but that was also locked. He angrily commanded that Padilla unlock the door, and Padilla eventually complied. Defendant got in the back seat, pointed the gun at Padilla, and started to argue with her. He demanded her cell phone, and Padilla gave it to him. Defendant read Padilla's call list and broke the cell phone in half. At defendant's command, Padilla backed her car off the road and the second car drove away. Defendant then demanded that Padilla drive him to

3

a friend's home and get rid of her brother-in-law. Padilla instead drove around a neighborhood while defendant argued with her. She stopped at a 7-Eleven store, went inside, and purchased cigarettes for defendant. She then returned to the car and drove to the intersection of Chappel Road and Ross Avenue. During the drive, she refused to take defendant to his friend's home or drop off her brother-in-law. She turned left on Ross. Defendant then told Padilla to stop and drop him off. Padilla stopped the car, and defendant exited from the right passenger rear door. Padilla then "hit the gas." Defendant fired a shot from his revolver that shattered the rear window of Padilla's car, sprayed chunks of glass on Padilla's back, and punctured Padilla's wrist that was holding the steering wheel. Padilla slowed down the car, and she and her brother-in-law slouched down. Defendant then fired another shot that hit the dashboard and shattered glass. Padilla managed to drive out of range. But her pain caused her to turn the driving over to her brother-in-law who drove her to the hospital.

<u>INSTRUCTION ON KIDNAPPING</u>

To be convicted of simple kidnapping, the defendant must have moved the victim a " 'substantial distance.' " (*People v. Bell* (2009) 179 Cal.App.4th 428, 435 (*Bell*).) In this case, the trial court instructed the jury in the language of the simple kidnapping instruction, CALCRIM No. 1215, and, in doing so, explained the "substantial distance" element as follows: "Substantial distance means more than a slight or trivial distance. In deciding whether the distance was substantial, you must consider all the circumstances related to the movement. Thus, in addition to considering the actual distance moved, you may also consider other factors, such as whether the movement increased the risk of physical or psychological harm, increased the danger of a foreseeable escape attempt, gave the attacker a greater opportunity to commit additional crimes, or decreased the likelihood of detection."

4

Defendant contends that the trial court erred by failing to instruct the jury sua sponte to consider whether his movement of Padilla was incidental to the charged crimes of corporal injury or domestic battery.

Aggravated kidnapping, such as kidnapping for robbery, requires movement of the victim "that is not merely incidental to the commission of the underlying crime and that increases the risk of harm to the victim over and above that necessarily present in the underlying crime itself." (*People v. Martinez* (1999) 20 Cal.4th 225, 232 (*Martinez*); Pen. Code, § 209, subd. (b).)  Thus, in *People v. Daniels* (1969) 71 Cal.2d 1119, 1130-1131, the Supreme Court held that moving victims from one room to another in order to rob or rape them was not kidnapping because "the brief movements which [the defendants] compelled their victims to perform were solely to facilitate such crimes."

As *Bell* noted, however, simple kidnapping does not include the requirement that the movement be beyond that " 'merely incidental to' " an underlying crime because, in simple kidnapping, no underlying crime is required.  (*Bell*, *supra*, 179 Cal.App.4th at p. 436.)  Historically, asportation for simple kidnapping required only an assessment of the "actual distance" the victim was moved.  (*People v. Caudillo* (1978) 21 Cal.3d 562, 574; see also *People v. Stanworth* (1974) 11 Cal.3d 588, 603.)  *Martinez* changed the historical standard and required the finder of fact to "consider the totality of the circumstances" in deciding whether a victim's movement was substantial.  (*Martinez*, *supra*, 20 Cal.4th at p. 237.)  "Thus, in a case where the evidence permitted, the jury might properly consider not only the actual distance the victim is moved, but also such factors as whether that movement increased the risk of harm above that which existed prior to the asportation, decreased the likelihood of detection, and increased both the danger inherent in a victim's foreseeable attempts to escape and the attacker's enhanced opportunity to commit additional crimes." (*Ibid.*)  In addition, the jury could consider "whether the distance a victim was moved was incidental to the commission of" an "associated crime." (*Ibid.*) *Bell* held that an " 'associated crime,' " within the meaning of the *Martinez* holding, "is

*any* criminal act the defendant intends to commit where, in the course of its commission, the defendant also moves a victim by force or fear against his or her will. It is not more complicated than that." (*Bell*, *supra*, at pp. 438-439.)

In *Bell*, the defendant drove away with his former wife in the passenger seat after he was approached by police attempting to arrest him. He traveled about 70 yards down the street, stopped to let the victim out, and then continued his reckless evasion of the police. He was convicted of both reckless evasion and kidnapping. The trial court gave the same instruction the trial court gave in this case and, as here, did not give the optional language, which stated, " 'In order for the defendant to be guilty of kidnapping, the other person must be moved or made to move a distance beyond that merely incidental to the commission of [the associated crime].' " (*Bell*, *supra*, 179 Cal.App.4th at p. 440; CALCRIM No. 1215.)

*Bell* held that it was reversible error not to have given an instruction in the optional language. It reasoned that, given the evidence, the jury could have decided that the defendant's movement of the victim 70 yards down the street was not substantial but merely incidental to the associated reckless-evasion crime. *Bell* also held that the bracketed, optional language in CALCRIM No. 1215 was misleading because it suggested that the "merely incidental" finding was a threshold consideration. *Bell* believed that the language in the pattern instruction could have led a jury to think that it had to acquit a defendant if "the movement was compelled 'in the course of' committing the associated crime, regardless of the increased risk of danger to the victim, or, for that matter, that the distance was 'substantial' by any reasonable measure." (*Bell*, *supra*, 179 Cal.App.4th at p. 440.) Thus, according to *Bell*, a correct instruction would be: " '[I]n addition to considering the actual distance moved, you may also consider other factors such as whether the [distance the other person was moved was beyond that merely incidental to the commission of the crime of evading a police officer]' " or the other circumstances currently listed in CALCRIM No. 1215. (*Bell*, *supra*, at pp. 440-441.)

6

Defendant urges that the corporal injury and domestic battery crimes "took place substantially while his mother moved the pair at his direction." He concludes that "Those two offenses were associated crimes because [he] committed them while [Padilla] was moved against her will by force and fear." Thus, according to defendant, had the jury been correctly instructed, the jury might have decided the movement was not "substantial" because the movement was merely incidental to the associated crimes.

We are convinced beyond a reasonable doubt that such an instruction would not have affected the verdict. (See *Chapman v. California* (1966) 386 U.S. 18, 24.)

Even if the jury were to have found that the movement of Padilla was incidental to one or the other assaultive crimes defendant committed, any reasonable jury would still have found the movement to be substantial. Defendant moved Padilla from Larkin Valley Road in Watsonville to Airport Road across a bridge to Highway 1 and ended the movement at Mesa Village Park on Green Valley Road. While the precise distance between the beginning and end of the movement does not appear in the record, considering that multiple roads and a bridge were encountered, the movement was " 'substantial' by any reasonable measure." (*Bell*, *supra*, 179 Cal.App.4th at p. 440.) Application of all the other factors further supports a finding that the movement was "substantial." The movement increased the risk of harm to Padilla as she remained in the car with defendant; it increased the danger inherent in Padilla's foreseeable attempt to escape; it gave defendant the opportunity to commit additional crimes against Padilla; and it decreased the likelihood of detection by keeping Padilla away from a public place where she might have attracted attention or called for help. No reasonable jury would have found, simply because defendant committed additional crimes against Padilla while his mother drove them, that the movement was merely incidental to these other crimes and not "substantial" in and of itself. We therefore conclude that any error in failing to instruct on the incidental movement factor was harmless beyond a reasonable doubt.

7

## CONVICTIONS FOR KIDNAPPING AND FALSE IMPRISONMENT

The People concede that "it appears that the false imprisonment conviction and the kidnapping conviction were based on the same act of forcing Padilla into the car and driving off."

"If both the false imprisonment count and kidnapping count relate to the same act, double conviction . . . is prohibited." (*People v. Ratcliffe* (1981) 124 Cal.App.3d 808, 820.)

We agree with the parties' assessment of the facts and will therefore strike defendant's false imprisonment conviction.

## CONVICTIONS FOR CORPORAL INJURY AND DOMESTIC BATTERY

Defendant contends that he could not be convicted of committing corporal injury and domestic battery because domestic battery is a lesser included offense to corporal injury and the "beating of . . . Padilla constituted one continuous course of conduct." We disagree.

Penal Code section 954 generally permits multiple convictions: "An accusatory pleading may charge . . . different statements of the same offense" and "the defendant may be convicted of any number of the offenses charged." The issue must be distinguished from the closely related question of whether a defendant may receive multiple punishments based on a single act or course of conduct. (*People v. Ortega* (1998) 19 Cal.4th 686, 692, disapproved on another point in *People v. Reed* (2006) 38 Cal.4th 1224, 1228.) Penal Code section 654 prohibits multiple punishments for the same act or omission. Our high court has recognized the tension between Penal Code sections 954 and 654. The solution adopted, in general, is "to permit multiple convictions on counts that arise from a single act or course of conduct--but to avoid multiple punishment, by staying execution of sentence on all but one of those convictions." (*People v. Ortega*, *supra*, at p. 692.) In fact, that is what the trial court did in this case, as defendant acknowledges.

8

It is true that a defendant "cannot be convicted of both an offense and a lesser offense necessarily included within that offense, based upon his or her commission of the identical act." (*People v. Sanchez* (2001) 24 Cal.4th 983, 987.)  Thus, the proper analysis involves a determination of whether the multiple charged crimes are for the identical act. In making this analysis, we review the record in the light most favorable to the judgment to determine whether it discloses substantial evidence--that is, evidence which is reasonable, credible, and of solid value--such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt of the multiple crimes charged against him or her.  (*People v. Johnson* (2007) 150 Cal.App.4th 1467, 1476-1477.)  We emphasize that the substantial evidence test is not based on how the prosecutor summed up the evidence in closing argument, what the jury found from the evidence, or how the trial court viewed the evidence for purposes of Penal Code section 654.  It is based on what the record supports.

Citing *Johnson*, the People urge that the evidence supports "that the convictions were based on different applications of force to Padilla."

In *Johnson*, we determined that multiple convictions for violating Penal Code section 273.5 (corporal injury on a spouse) were proper where the convictions were based on multiple injuries inflicted during a single course of conduct.  There, the defendant beat the victim about the face and head, held her by the throat against the wall, and stabbed her in the arm.  We agreed with the reasoning of *People v. Harrison* (1989) 48 Cal.3d 321, 326, in which our Supreme Court rejected the contention that the defendant could not be convicted of multiple acts of digital penetration committed in the course of a 10-minute attack on the victim.

Here, defendant first assaulted Padilla by throwing her into the back of the car. From this evidence, the jury could have concluded that the crime of domestic battery was complete.  Defendant next assaulted Padilla when, after arguing with her, he beat her in the car on the way to Mesa Village Park.  From this evidence, the jury could have

9

concluded that the crime of corporal injury was complete.  We are satisfied that (1) the crimes charged here are analogous to the separate counts of corporal injury on a spouse in *Johnson*, and (2) the evidence is sufficient to support the two convictions.  Further, pursuant to Penal Code section 654, the trial court properly stayed the punishment for domestic battery.  There was no improper multiple conviction.

## CONSECUTIVE SENTENCE FOR CORPORAL INJURY

Defendant contends that his one-year consecutive sentence for corporal injury should have been stayed under Penal Code section 654 because Padilla suffered the corporal injury during the same course of conduct as the kidnapping.  We disagree.

Penal Code section 654 provides in part, "(a) An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ."

"[I]t is well settled that [Penal Code] section 654 applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction.  [Citation.]  Whether a course of conduct is indivisible depends upon the intent and objective of the actor."  (*People v. Perez* (1979) 23 Cal.3d 545, 551.)  If all the offenses were incident to one objective, the defendant may not be punished for more than one, e.g., a defendant who attempts murder by setting fire to the victim's bedroom could not be punished for both arson and attempted murder, because his primary objective was to kill, and the arson was the means of accomplishing that objective and thus merely incidental to it.  (*Ibid.*)  "On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for the independent violations committed in pursuit of each objective even though the violations were parts of an otherwise indivisible course of conduct."  (*Ibid.*)  For example, the objectives to drive while intoxicated and to

10

drive with a suspended license were separately punishable, though they occurred simultaneously. (*Id.* at p. 552.) The purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal culpability. (*Id.* at p. 552, fn. 4.)

"A trial court's implied finding that a defendant harbored a separate intent and objective for each offense will be upheld on appeal if it is supported by substantial evidence." (*People v. Blake* (1998) 68 Cal.App.4th 509, 512.)

Here, the evidence supports that defendant's objective in kidnapping Padilla was to imprison Padilla in his vehicle so that he could discuss with her their failing relationship. And it also supports that, once the discussion had deteriorated into an argument, defendant's objective in beating Padilla was to hurt rather than imprison her. Defendant's point that there was a single objective to hurt Padilla because kidnapping does not facilitate voluntary discussion is simply a view of the evidence at odds with the evidence supporting the judgment.

In short, the evidence supports that defendant had a clear objective to cause physical injury to Padilla, independent of his objective in restraining her freedom.

<u>DISPOSITION</u>

The judgment is modified to strike the conviction for false imprisonment (count 6), recalculate the mandatory court security fee (Pen. Code, § 1465.8) from $280 to $240 (to reflect six rather than seven convictions at $40 each), and recalculate the mandatory court facilities funding fee (Gov. Code, § 70373) from $210 to $180 (to reflect six rather than seven convictions at $30 each). As so modified, the judgment is affirmed. The abstract of judgment is amended to reflect that the base five-year sentence for shooting (count 2) is stayed.

11

_____
                        Premo, J.

WE CONCUR:

_____
      Rushing, P.J.

_____
      Elia, J.

12