Filed 5/30/13  P. v. Fraga CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

THE PEOPLE,

    Plaintiff and Respondent,

      v.

ALFREDO FRAGA,

    Defendant and Appellant.

G046178

(Super. Ct. No. 09CF1318)

O P I N I O N

        Appeal from a judgment of the Superior Court of Orange County, Gary S. Paer, Judge.  Affirmed.

        Christine Vento, under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Julie L. Garland, Senior Assistant Attorney General, Andrew Mestman and Vincent P. LaPietra, Deputy Attorneys General, for Plaintiff and Respondent.

Alfredo Fraga appeals from a judgment after a jury convicted him of two counts of sexual penetration by force.  As to each count, the jury found Fraga kidnapped his victim in the commission of the offenses.  Fraga argues insufficient evidence supports the jury's finding he kidnapped the victim.  We disagree and affirm the judgment.

FACTS

One early afternoon, Sheryl M. (Sheryl), a 58-year-old woman, was walking on the Esplanade Trail in North Tustin listening to music on her IPod.  The trail runs adjacent to Esplanade Avenue, which is a paved two-lane road.  Gravel, trees, and bushes separate the road from the trail, and another area of bushes separates the opposite side of the trail from the backyards of multiple homes.  The well-marked trail is used by many local residents for exercise and recreation.  Pedestrians on the trail can see passing cars on Esplanade Avenue, and commuters on Esplanade Avenue can see pedestrians on the trail.

As Sheryl walked down the trail, she saw Fraga, who is approximately six feet, one inch tall and weighs about 250 pounds, cross Esplanade Avenue and walk onto the trail ahead of her.  Fraga was dressed in jogging clothes, and he pretended to tie his shoes on a bench as Sheryl walked past him.  Fraga and Sheryl did not say anything to each other as she passed, but they made eye contact.  Sheryl had never seen Fraga before that day.

Shortly thereafter, Fraga approached Sheryl from behind and grabbed her around her arms and waist.  Sheryl immediately recognized Fraga, the man she had previously passed on the trail, as her attacker.  Fraga dragged Sheryl backwards behind the bushes between the trail and the backyards of the homes adjacent to the trail.  After Fraga dragged Sheryl behind the bushes, he assaulted her by putting his hands down her pants and forcing his fingers into her vagina and anus.

2

Sheryl was able to scream for help throughout the attack, despite Fraga telling her to "shush" as he dragged and subsequently assaulted her. Her cries for help were eventually heard by residents of the nearby homes and commuters on Esplanade Avenue.

Ronald Fortier, one of the residents whose backyard abuts the bushes where the assault occurred, heard Sheryl's screams while he was working in his backyard. After hearing Sheryl's screams, Fortier slowly proceeded through his backyard gate, which opens onto the trail. Although Fortier could not tell what had happened before he opened his gate, he saw Fraga fleeing. Fortier yelled for his wife to call 911.

James Hohman, a commuter on Esplanade Avenue, heard Sheryl's screams as he and his wife drove past the location where the assault occurred. Hohman turned his car around and proceeded back towards the location where he believed he heard Sheryl's screams. Once there, Hohman saw Fraga leaving the area by walking, and later running, along the edge of the trail. Hohman got out of his car and asked his wife to bring Scott Steinle, an off-duty sheriff who lived in the neighborhood, to the scene. Hohman followed Fraga down the trail until Steinle arrived and apprehended Fraga.

After a law enforcement officer advised Fraga of his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, Fraga admitted he approached a woman who he thought was a former teacher, but when she yelled, Fraga backed away without having touched the woman. A sexual assault examination revealed injures consistent with forcible sexual penetration. Sheryl's DNA could not be excluded as the source of the DNA that was found on fingernail scrapings from Fraga's right hand.

An amended information charged Fraga with two counts of sexual penetration by foreign object by force (Pen. Code, § 289, subd. (a)(1)-counts 1 & 2).[1] As

---

[1] All further statutory references are to the Penal Code.

to both counts, the amended information alleged Fraga kidnapped Sheryl in violation of sections 207, 209, and 209.5 (§ 667.61, subds. (b) & (e)(1)).

At trial, Sheryl, Fortier, Steinle, and Hohman testified consistently with the events described above. During Sheryl's testimony, the prosecutor had her view three photographs, exhibit Nos. 2, 10, and 15, which depict different vantage points of the trail, the bushes adjacent to the trail, the area where the assault occurred, and the walls of residential backyards that abut the trail area. Sheryl used a pen to place a mark on each of these photographs in order to indicate where the assault took place.

Exhibit No. 2 depicts a view of the area where the assault occurred, the surrounding bushes, and Fortier's backyard wall. Exhibit No. 10 depicts the trail, the narrow space between the bushes through which Fraga dragged Sheryl, and the area between the bushes and Fortier's backyard wall where the assault occurred. Finally, exhibit No. 15 depicts a slightly different view of the trail, the space between the bushes, and the area where the assault occurred. During trial, Sheryl placed two marks, "X1" and "X2," on exhibit No. 15 to indicate: (1) where Fraga initially attacked her, "X1"; and (2) where the assault occurred, "X2".

On cross-examination, Sheryl clarified that one day after the attack she told a police officer she estimated Fraga dragged her three-to-five feet when he forced her from the trail to the area where the assault occurred. That police officer testified he recalled Sheryl told him that she was not very good at estimating distances before she provided him with her three-to-five foot estimate.

Fortier, the neighbor who saw Fraga run from the scene as he looked out onto the trail area from his backyard gate, testified as to the authenticity of 12 photographic exhibits offered by the prosecution, including exhibits Nos. 2 and 10. Nine of those photographs are included in the record for our review. These photographs depict varying vantage points of the immediate and surrounding area where the assault occurred. Altogether, these photographs show the bushes Sheryl was dragged behind

4

were thick and nearly as tall as Fortier's backyard wall. Moreover, the photos show the ground from the trail to the area behind the bushes slopes downward approximately one-to-two feet in elevation.

The teacher that Fraga claimed he recognized testified she was not aware of the Esplanade Trial and was not there on the day of the incident. Fraga offered testimony from numerous mental health professionals who testified concerning his mental health, the medications he was prescribed, and their side effects, including hallucinations.

The jury convicted Fraga on counts 1 and 2 and found true the kidnapping enhancements. The trial court sentenced Fraga on each of the two counts to 15 years to life but the court ran the sentence on count 2 concurrent to the sentence on count 1.

DISCUSSION

Fraga argues insufficient evidence supports the jury's finding on the simple kidnapping enhancement because: (1) the distance he dragged Sheryl to force her behind the bushes was insubstantial; and (2) his dragging of Sheryl did not substantially increase the risk of harm, prevent detection, or increase his opportunity to commit further crimes against her. We disagree.

"The law governing sufficiency-of-the-evidence challenges is well established and applies both to convictions and special circumstance findings. [Citations.] In reviewing a claim for sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or special circumstance beyond a reasonable doubt. We review the entire record in the light most favorable to the judgment below to determine whether it discloses sufficient evidence—that is, evidence that is reasonable, credible, and of solid value—supporting the decision, and not whether the evidence proves guilt beyond a reasonable doubt. [Citation.] We neither reweigh the evidence nor reevaluate the credibility of witnesses. [Citation.] We presume in support of the judgment the existence of every fact the jury

5

reasonably could deduce from the evidence. [Citation.] If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.]" (*People v. Jennings* (2010) 50 Cal.4th 616, 638-639.)

Under section 667.61, subdivision (b), any person who is convicted of sexual penetration in violation of section 289, subdivision (a), under one of the circumstances listed in section 667.61, subdivision (e), "shall be punished by imprisonment in the state prison for 15 years to life." (§ 667.61, subd. (b).) One of the circumstances listed in section 667.61, subdivision (e), is "the defendant kidnapped the victim of the present offense in violation of [s]ection 207, 209, or 209.5." (§ 667.61, subd. (e)(1).)

In the present case, the trial court instructed the jury with CALCRIM No. 1215, "Kidnapping," pursuant to section 207, subdivision (a). That statute provides: "Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping." (§ 207, subd. (a).)

The following three elements comprise the crime of kidnapping: "'(1) a person was unlawfully moved by the use of physical force or fear; (2) the movement was without the person's consent; and (3) the movement of the person was for a *substantial distance*.' [Citation.]" (*People v. Bell* (2009) 179 Cal.App.4th 428, 435, italics added.)

In *People v. Martinez* (1999) 20 Cal.4th 225, 235-238 (*Martinez*), the California Supreme Court explained what a trier of fact may properly consider when determining whether the prosecution has presented sufficient evidence to prove the substantial distance (i.e., "asportation") element of simple kidnapping. According to the *Martinez* court, the trier of fact should consider the totality of the circumstances to determine whether there is sufficient evidence to indicate a defendant's movement of the

6

person was "'*substantial in character*.'" (*Ibid*., italics added.) The *Martinez* court explained: "Section 207[, subdivision] (a)[,] proscribes kidnapping or forcible movement, not forcible movement for a specified number of feet or yards . . . [and] limiting a trier of fact's consideration to a particular distance is rigid and arbitrary, and ultimately unworkable." (*Martinez*, *supra*, 20 Cal.4th at p. 236.) Because the statute "'does not speak in terms of a movement of any specific or exact distance[,]'" the trier of fact may consider "*the totality of the circumstances*" in conjunction with the actual distance the person is moved. (*Id*. at pp. 235-237, italics added.) More specifically, the trier of fact, when determining whether a defendant's movement of a victim is substantial in character, may properly consider: (1) the actual distance the victim is moved; (2) whether the movement increased the risk of harm to the victim; (3) whether the movement decreased the likelihood of detection; (4) whether the movement made the victim's foreseeable attempts to escape more dangerous; and (5) whether the movement enhanced the defendant's opportunity to commit additional crimes. (*Id*. at p. 237.) The *Martinez* court concluded, "contextual factors, whether singly or in combination, will not suffice to establish asportation if the movement is only a very short distance." (*Ibid*.) In *People v. Morgan* (2007) 42 Cal.4th 593, 606-607, the California Supreme Court reaffirmed the phrase "'substantial distance'" requires a showing the victim was moved "a 'significant amount' as contrasted with a distance that is 'trivial.'"

We note Fraga does not dispute he committed sexual penetration with his fingers by force. Nor does he dispute there was sufficient evidence of the first two elements of kidnapping. Fraga only challenges the sufficiency of the evidence as to the last element—whether his dragging of Sheryl behind the bushes was for a substantial distance. As we explain below, we conclude it was a substantial distance.

With respect to whether Fraga moved Sheryl a substantial distance, we conclude there was sufficient evidence to support the jury's finding Fraga's movement of Sheryl was substantial in character. (See *Martinez*, *supra*, 20 Cal.4th at pp. 235-238.)

7

First, there was evidence from which the jury could reasonably conclude Fraga's movement of Sheryl was greater than "a very short distance." (*Id*. at p. 237.) Fraga's assertion the prosecutor failed to present the jury with evidence showing he moved Sheryl more than a very short distance is without merit. The photographic exhibits, particularly exhibit Nos. 15 and 2, and Sheryl's testimony regarding the photographic exhibits, taken together, provided the jury with credible evidence Fraga dragged Sheryl 10-to-20 feet to force her behind the bushes adjacent to the trail. Fraga's dragging of Sheryl over the distance indicated by her "X1" and "X2" markings on exhibit No. 15, although not an incredibly long distance, adequately supports the jury's finding Fraga moved Sheryl greater than a very short distance. (See *People v. Arias* (2011) 193 Cal.App.4th 1428, 1435 [finding sufficient evidence for simple kidnapping conviction where the victim was dragged 15 feet]; see also *People v. Shadden* (2001) 93 Cal.App.4th 164, 168-169 [nine feet substantial distance for kidnapping to commit rape pursuant to section 209, subdivision (b)(1)].)

It is true Sheryl told a police officer she estimated Fraga dragged her three-to-five feet during the attack. But it is also true the police officer testified Sheryl told him that she was not very good at estimating distances before she provided him with her three-to-five foot estimate. Based on this evidence, it was reasonable for the jury to conclude Sheryl's markings on exhibit No. 15 indicate the actual distance Sheryl was dragged and that the three-to-five foot estimate she provided the police officer was the result of her inability to accurately estimate distances. Indeed, we have reviewed the exhibits, specifically exhibit Nos. 2, 10, and 15, and based on our review, we conclude it was certainly reasonable for the jury to conclude the distance from where Fraga grabbed Sheryl to where he dragged her was at least 10 feet (and possibly closer to 20 feet). Contrary to Fraga's assertion otherwise, the jury was limited to Sheryl's testimony but could also consider the photographic exhibits.

8

As to the contextual factors, there was sufficient evidence Fraga's movement of Sheryl was substantial in character. (See *Martinez*, *supra*, 20 Cal.4th at pp. 235-238.) The photographic exhibits show the bushes Fraga dragged Sheryl behind were thick and nearly as tall as the vine-covered block wall behind them. The photographs also show there was a one to two foot drop in elevation from the trail to the location where the assault occurred, creating a small ravine making it more difficult for a passerby to see anyone over the bushes. Additionally, the photographs show the opening in the bushes through which Fraga dragged Sheryl was narrow, and it is not clear a pedestrian on the trail would have been able to see Fraga and Sheryl through the opening, depending on the direction the person was traveling. Moreover, as Hohman and his wife drove past the location where the assault was taking place, they only heard Sheryl's screams, and they did not see Sheryl or Fraga, whose is a very large man, behind the bushes.

Based on all the evidence, it was certainly reasonable for the jury to conclude Fraga's dragging of Sheryl behind the bushes clearly increased the risk of harm to Sheryl. As Sheryl testified, Fraga waited to assault her until he had dragged her behind the bushes, concealing his actions from people who may have been on the trail or driving along Esplanade Avenue. Also, Fraga's movement of Sheryl behind the bushes decreased the likelihood of detection, as evidenced by the fact Hohman and his wife only heard Sheryl's screams for help, and did not see Sheryl or Fraga, as they drove past the scene. Furthermore, Fraga's dragging of Sheryl behind the bushes limited her chance of escaping his attack. As the photographic exhibits show, Fraga pinned Sheryl between tall and thick bushes on one side and a tall block wall on the other side. If she had been able to escape his grasp, she could have only tried to run over uneven, plant-covered terrain in two directions.

Finally, Fraga's reliance on cases predating *Martinez, supra,* 20 Cal.4th 225, to support his claim the distance he moved Sheryl was trivial is misplaced. The *Martinez* court expressly disapproved of any bright line rule concerning the minimum distance moved without consideration of the contextual factors. (*Id.* at pp. 233, 236.) Thus, based on the entire record, there was sufficient evidence Fraga moved Sheryl a substantial distance.

## DISPOSITION

The judgment is affirmed.

O'LEARY, P. J.

WE CONCUR:

MOORE, J.

THOMPSON, J.

10