Filed 6/26/15  P. v. Soto CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B253607 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA412259) |
| v. | |
| CARLOS SOTO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, George G. Lomeli, Judge.  Affirmed.

Alan S. Yockelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey and Blythe J. Leszkay, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Carlos Soto raises contentions of sufficiency of the evidence and instructional error following his conviction of kidnapping and corporal injury to a cohabitant, with an enhancement for a prior serious felony conviction.

For the reasons discussed below, the judgment is affirmed.

## BACKGROUND

Viewed in accordance with the usual rules of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established the following.

The victim, Denise G., testified as follows. She and defendant Soto were in a relationship and had two children together. All four of them lived together in apartment 25 on Pasadena Avenue in Los Angeles. On June 7, 2013, Soto was going through Denise's phone and discovered texts from a male acquaintance. Soto became enraged, calling Denise a "bitch and a whore and all kinds of names." He punched her approximately five times in the right arm, striking her "from [her] shoulder all the way down to [her] elbow." Denise identified photographs showing the large red bruises that resulted from these punches. Soto also punched her twice on the right leg, near her knee, leaving a big bruise, which Denise again identified in a photograph.

Their children began to cry. Soto continued to harangue Denise, and at one point threw the phone at her "real hard," leaving a small bruise on her back which she identified in a photograph. He also poked her hard in the left eye with two fingers, bruising her face. Denise identified a photograph showing her half-closed left eye with a slight bruise underneath. Only after Soto's children pleaded tearfully for him to stop did the attack subside.

Denise left apartment 25 with her children. Hearing Soto yell "bitch," Denise ran to apartment 12, in an adjacent building, where her friend Consuelo lived, locking the door behind her. Apartment 12 faced apartment 25 from the adjacent building, but as no direct path linked the doors to each other, Denise had to walk "all the way around" the rectangular walkway and over a bridge between the buildings to reach apartment 12.

Soto followed, shouting and banging on the door of apartment 12. Denise called 9-1-1 on Consuelo's phone and said her boyfriend was trying to hit her. Soto then

2

walked back to apartment 25.  Denise testified at trial:  "I . . . see him going through my phone, he is nodding his head, keeps looking at Consuelo's apartment.  He knows I'm in the living room.  At that point, he goes back to Consuelo's door, yelling at me, hitting the door, saying he is going to go in and that's when I placed the second 9-1-1 call."  Denise told the 9-1-1 operator she was in apartment 12.

At some point, Consuelo left to run an errand and, as Consuelo was returning, Soto followed her into apartment 12 just as Denise was calling 9-1-1 a third time.  She threw the phone down onto the couch.  The 9-1-1 call remained connected.  As the operator listened, Soto shouted at Denise, demanded to know the identity of "D-Boy," slapped her, spat in her face and grabbed her hair.  At one point, Soto said he did not "wanna do this in front of people."

After approximately fifteen minutes, Soto flung Denise to the ground, took her by the hair, and dragged her about 20 feet until the two of them were just outside Consuelo's apartment.  Once outside, Soto pulled Denise to her feet and marched her back to their apartment, still holding her by her hair.  Denise noticed some other neighbors watching the commotion from downstairs.  When Denise apparently tried to extricate herself from Soto's grasp, he bit her hand.  Denise did not suffer any injuries from the bite.  Once back inside apartment 25, Soto resumed his attack, slapping and spitting on Denise and pinning her to the couch with his knee.  At this point, police officers responding to Denise's 9-1-1 calls entered the apartment and arrested Soto.

Soto did not call any witnesses.

Soto was convicted of kidnapping and corporal injury to a cohabitant, with an enhancement for a prior serious felony conviction.  (Pen. Code, §§ 207, 273.5, subd. (a), 667, subd. (a)(1)).[1]  He was sentenced to state prison for a term of 15 years.  This appeal followed.

---

[1]     All further statutory references are to the Penal Code unless otherwise specified.

**CONTENTIONS**

Soto contends:  (1) the kidnapping conviction must be reversed because the evidence was insufficient to establish that crime's asportation element; and (2) the trial court erred in failing to instruct the jury to consider whether the alleged kidnapping was movement that was merely incidental to the commission of a kidnapping-associated crime.

**DISCUSSION**

1. *Substantial evidence supported the jury's kidnapping verdict.*

Soto contends the kidnapping conviction must be reversed because the evidence was insufficient to establish that crime's asportation element.  There is no merit to this claim.

*a.  Legal principles.*

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence – that is, evidence that is reasonable, credible, and of solid value – such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.] . . . .  The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence.  [Citation.]  ' "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt.  ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.]" ' [Citation.]" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

To prove the crime of simple kidnapping (§ 207, subd. (a)), "the prosecution must prove three elements:  (1) a person was unlawfully moved by the use of physical force or fear; (2) the movement was without the person's consent; and (3) the movement of the

person was for a substantial distance.  [Citation.]" (*People v. Jones* (2003) 108 Cal.App.4th 455, 462.)  The third element is the "asportation" element.

In evaluating the element of asportation, a jury may convict only upon finding that the victim was moved "a distance that was 'substantial in character.' " (*People v. Martinez* (1999) 20 Cal.4th 225, 237 (*Martinez*).  The jury may so decide by evaluating the distance alone, and need not consider any other factor.  (*Ibid.*)  However, where the evidence permits, the finder of fact may examine not only the physical distance the victim was moved, but may also take into account the " 'scope and nature' of the movement and the increased risk of harm to the victim." (*Id.* at p. 236.)  "[T]he jury should consider the totality of the circumstances," and may consider "whether that movement increased the risk of harm above that which existed prior to the asportation, decreased the likelihood of detection, and increased both the danger inherent in a victim's foreseeable attempts to escape and the attacker's enhanced opportunity to commit additional crimes." (*Id.* at p. 237.)  "At the same time, we emphasize that contextual factors, whether singly or in combination, will not suffice to establish asportation if the movement is only a very short distance." (*Ibid.*)

b.  *Application.*

Soto makes two arguments why the evidence at trial failed to establish that his movement of Denise was for a substantial distance:  (1) the actual distance of the movement was too short; and, (2) the *Martinez* non-distance factors did not render the distance substantial because the police already had been called, they knew where Denise was, and the movement occurred in view of her neighbors.  We address these arguments in turn.

(1)  *The distance was sufficient to prove asportation.*

Soto argues the distance he forced Denise to travel was insufficient to support his kidnapping conviction.  He asserts, "No distance estimate was offered for the path from Denise G.'s apartment to Consuelo's, but the description suggests a modest distance.  The only distance estimate offered into evidence was 20 feet for the distance appellant dragged Denise G. *within* Consuelo's apartment – from the couch to the doorway."

5

(Italics added.)  Pointing to the language in *Martinez* explaining that "contextual factors, whether singly or in combination, will not suffice to establish asportation if the movement is only a very short distance" (*People v. Martinez*, *supra*, 20 Cal.4th at p. 237), Soto argues, "Here, there was little evidence offered to establish the distance Denise G. was moved," and she "described Consuelo's apartment as '[r]ight across from my apartment,' suggesting that the distance was not great."  However, while it is true the jury never received an estimate of the total distance, the jury did view several photographs of the apartment complex on which Denise used a permanent marker to indicate the location of both apartments, and the path she and Soto traveled between them.

Based on the evidence submitted to it, the jury was capable of estimating the distance of Denise's movement.  Exhibit 1, a photograph, shows a view of the two apartment doors and a good portion of the walkway on either side.  Denise, in the presence of the jury, drew the path she took on this photograph.  Exhibit 2 shows the door of apartment 25, as well as the walkway leading away from it and half of the walkway bridge.  Exhibit 8 shows a circled door, identified at trial as the same door circled in exhibit 1, and the walkway in front of it, continuing to the left out of the frame.  These exhibits enabled the jury to estimate the distance Denise was moved and to reasonably conclude the distance was substantial.[2]

Soto fails to cite any case law for the proposition that the distance traveled here was so short that the prosecution failed to prove asportation, no matter what other factors might have been present.  In fact, cases have found movements for fairly short distances to be sufficient where the evidence showed the existence of other relevant factors.  (See, e.g., *People v. Arias* (2011) 193 Cal.App.4th 1428, 1435 [movement of victim a distance of 15 feet from public area to apartment interior sufficient for kidnapping conviction]; *People v. Smith* (1995) 33 Cal.App.4th 1586, 1594 [movement 40 to 50 feet from

---

[2]      We attach copies of People's exhibits 1, 2 and 8 as exhibits A, B, C, respectively, to this opinion.

6

driveway to interior of camper sufficient to sustain sentencing enhancement (§ 667.8) based on simple kidnapping].)

The distance Soto forced Denise to move was not by itself insufficient to prove the asportation element of kidnapping.

(2) *The evidence was sufficient for the jury to conclude the distance was substantial under the totality of the circumstances.*

Soto next argues that the totality of the circumstances fails to render the distance substantial; i.e., that there was no increase in risk of harm or decrease in likelihood of detection as a result of the movement. He notes Denise had given the police both apartment numbers, the police were on their way, and indeed they arrived shortly after Soto forcibly returned Denise to apartment 25. In addition, the commotion had drawn neighbors from their apartments, and they apparently watched the entire movement from below. Soto argues, therefore, that the movement did not *decrease* the likelihood of detection, and might even have *increased* it. However, even assuming *arguendo* that the movement did indeed increase the likelihood of detection, this does not dispose of the matter. Decreased likelihood of detection is but one factor among several that *Martinez* empowers juries to examine in determining whether the distance was substantial.

Soto seemingly asserts that in evaluating these other factors, i.e., whether the "movement increased the risk of harm above that which existed prior to the asportation, decreased the likelihood of detection, and increased both the danger inherent in a victim's foreseeable attempts to escape and the attacker's enhanced opportunity to commit additional crimes" (*People v. Martinez*, *supra*, 20 Cal.4th at p. 237, fn. omitted), the jury must consider "not . . . what could have been but . . . what was, and here, the facts show that the movement of Denise G. did not increase the risk of harm to her nor did it decrease the likelihood of detection." However, *Martinez* cautions that "[t]he fact these dangers do not in fact materialize does not, of course, mean that the risk of harm was not increased." (*Id.* at p. 233)

The jury heard the tape recording of Denise's third 9-1-1 call in which Soto told her, "I'm fucking telling you I don't wanna do this in front of people." The jury could

7

have interpreted this to mean Soto did not want to be observed, and that removing Denise from Consuelo's presence and back into apartment 25 would afford him the "opportunity to commit additional crimes." Additionally, Denise testified that Soto bit her when she attempted to escape his grasp while he was forcing her to go from Consuelo's apartment back to their apartment. Like the risks accompanying asportation in a vehicle or under other dangerous conditions, Soto's reaction was indicative of the increased danger from a kidnap victim's foreseeable attempt to escape. Denise testified: "[W]hen I tried to get his arm, his hand off of me, that's when he bit me, [and] said where the hell was I going."

In sum, ample evidence supported the jury's verdict. Although the distance was not quantified, the jury viewed exhibits showing the distance Denise was moved and it supported a finding that she was moved a substantial distance. The jury heard the recording of a 9-1-1 call containing a statement by Soto that he did not "wanna do this in front of people." The evidence demonstrated that Soto treated Denise more roughly when they were outside Consuelo's presence (poking Denise hard in the eye and punching her) than when they were inside apartment 12 (slapping, spitting and grabbing her hair). The jury also heard the sounds of the mêlée, and could in light of the evidence reasonably have concluded that the movement created a greater risk of harm to Denise in the seclusion of their apartment than if Soto had continued his attack where they were.

We therefore reject Soto's contention that the evidence was insufficient to support his conviction for kidnapping.

2. *The exclusion of the "associated crime" language from CALJIC 9.50 was not error.*

Soto contends the movement of Denise was merely incidental to the associated crime of corporal injury to a cohabitant charged in count 1. Accordingly, he argues the trial court erred in excluding from its kidnapping instruction language discussing movement incidental to an associated crime. We reject this contention because the crime of corporal injury to a cohabitant was not in progress at the time the movement occurred and, therefore, the failure to instruct was not error.

8

### a. *Legal principles*

A trial court must instruct the jury on the essential elements of an offense (*People v. Flood* (1998) 18 Cal.4th 470, 504) and " ' "even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.]   The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." [Citation.]' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154.)   "A 'criminal defendant is entitled to adequate instructions on the defense theory of the case' if supported by the law and evidence.  [Citation.]" (*People v. Bell* (2009) 179 Cal.App.4th 428, 434.)

In a kidnapping case "involving an associated crime, the jury should be instructed to consider whether the distance a victim was moved was incidental to the commission of that crime in determining the movement's substantiality." (*People v. Martinez*, *supra*, 20 Cal.4th at 237.)  An "associated crime" is "*any* criminal act the defendant intends to commit where, in the course of its commission, the defendant also moves a victim by force or fear against his or her will." (*People v. Bell*, *supra*, 179 Cal.App.4th at 438-439, original italics.)  If the victim's movement was merely "incidental" to an associated crime, then this is a factor the jury should take into account when deciding if the distance the victim was forced to move was "substantial."

Whether or not a movement is incidental to an associated crime is a fact-specific inquiry turning on "the actual acts undertaken by the defendant in a specific case, not a bare comparison of the elements of the crimes." (*People v. Bell*, *supra*, 179 Cal.App.4th at 438.)  For example, in *People v. Washington* (2005) 127 Cal.App.4th 290, this court held that the movement of two victims from a bank's teller area into its vault room was incidental to the associated bank robbery because "robbery of a business owner or employee includes the risk of movement of the victim to the location of the valuables owned by the business that are held on the business premises." (*Id*. at p. 300.)  "[T]here was no excess or gratuitous movement of the victims over and above that necessary to obtain the money in the vault," this court observed.  (*Id*. at p. 299.)  Likewise, in *People*

9

*v. Bell,* the defendant's movement of the victim 70 feet in his car was sufficiently related to the associated crime of evasion[3] to trigger an incidentalness instruction because "the jury could have found that *in the course of the evasion*, [the victim] was moved by force or fear against her will." (*People v. Bell*, *supra*, 179 Cal.App.4th at p. 439, italics added.) However, in *People v. Salazar* (1995) 33 Cal.App.4th 341, the movement of the victim from a motel balcony, across a motel room, and into a bathroom was not incidental to an associated rape because "[t]he movement of [the victim] was not necessarily related to the rape crime itself; rather, a jury could reasonably conclude it was an essential part of [the defendant]'s plan to avoid detection and to make the crime easier to commit." (*Id.* at p. 347.)

### b. *Application*

Soto's theory of the case, as we gather from defense counsel's closing argument, was that Denise sustained injuries from Soto's assault in both apartments, and since wounding or injury is an element of corporal injury to a cohabitant (§ 273.5, subd. (a)), the movement occurred during a single unitary course of assaultive conduct. On appeal, Soto contends that the trial court should, in light of the evidence, have instructed the jury *sua sponte* on movement incidental to an associated crime.

The jury was instructed on kidnapping with CALJIC No. 9.50. However, the language in this instruction relating to movement incidental to an associated crime was not included. The omitted language would have said, "If an associated crime is involved, the movement also must be more than that which is incidental to the commission of the other crime," and "An associated crime is any criminal act, whether charged or not, the defendant intends to commit where, in the course of its commission, the defendant also moves a victim by force or fear against his or her will." (CALJIC No. 9.50.)[4]

---

[3] Vehicle Code section 2800.2 proscribes evading a police officer while driving recklessly.

[4] As it happens, the language the court deleted from the instruction is not a correct statement of the law. It implies the jury can convict only where the movement was not incidental, when in fact incidentalness is only one factor the jury should consider in

10

In determining whether the trial court's failure to include this "incidental to the commission of the other crime" language in the kidnapping instruction constitutes reversible error, we must first determine whether Soto's theory of the case was "supported by the law and evidence." (*People v. Bell*, *supra*, 179 Cal.App.4th at 434.) In doing so, we examine Soto's "actual acts" in this case. (*Id.* at 438.) Soto beat Denise repeatedly until she left apartment 25. Once she arrived at Consuelo's apartment, she remained there and Soto remained stymied on the other side of the door. When Consuelo let him in, Soto spat at Denise, slapped her and pulled her hair, and then dragged her through the door, across the walkway (where he bit her hand), and back into apartment 25.

The offense of corporal injury to a cohabitant requires the infliction of a traumatic condition, defined in section 273.5, subdivision (d), as "a condition of the body, such as a wound, or external or internal injury. . . , whether of a minor or serious nature, caused by a physical force." Section 273.5 "proscribes a 'very particularized battery.' [Citation.] The essence of any battery is the touching of the victim. [Citation.] In section 273.5, the touching must result in bodily injury. Thus, evidence of one punch to the face resulting in a black eye would constitute a completed violation of section 273.5." (*People v. Johnson* (2007) 150 Cal.App.4th 1467, 1477.) Section 273.5 is violated if there is evidence of bruising (*People v. Beasley* (2003) 105 Cal.App.4th 1078, 1085) or redness (*People v. Wilkins* (1993) 14 Cal.App.4th 761, 771), but not by evidence of pain without any physical manifestation (see *People v. Abrego* (1993) 21 Cal.App.4th 133, 138 ["soreness and tenderness" without any physical manifestation of injury does not constitute requisite traumatic condition].)

---

deciding whether the movement was substantial. (See *People v. Martinez*, *supra*, 20 Cal.4th at 237.) CALCRIM 1215, on the other hand, correctly informs the jury that "[i]n deciding whether the distance was substantial . . . you may also consider other factors such as . . . whether the distance the other person was moved was beyond that merely incidental to the commission of *<insert associated crime>*."

The evidence here was that the only traumatic injuries Denise sustained – bruising to her arm, leg, back and face – were all inflicted in apartment 25 *before* she fled to apartment 12, which is where the kidnapping began. Soto has not pointed to any evidence in the record demonstrating Denise suffered traumatic injuries except those she sustained *prior* to being kidnapped.

Denise testified there was no resulting injury when Soto bit her hand while he was dragging her from Consuelo's apartment back to apartment 25. Inside Consuelo's apartment, the evidence demonstrates Soto assaulted Denise by slapping her, pulling her hair and dragging her on the floor, but he did not inflict any section 273.5 traumatic injuries because there was no evidence that he left physical marks from those actions.

The jury was instructed that corporal injury to a cohabitant requires infliction of a traumatic injury, which the instructions defined as "a condition of the body such as a wound or external or internal injury, whether of a minor or serious nature caused by a physical force." During closing argument, the prosecutor noted this instruction and then said: "Well, you heard the testimony from Denise G. You saw the pictures and the pictures . . . will go in the back room with you. You saw the pictures where on Denise G.'s arm, there were bruises. [¶] On her leg there were bruises. You saw the picture on [*sic*] her back. There was a bruise and under her left eye, there was swelling and a bruise. Ladies and gentlemen of the jury, that is the physical injury. That's element 1. I need to prove no more regarding that element." The prosecutor continued: "The bruises on her arm were caused by him punching her. The bruise on her leg was caused by the defendant punching her. The bruise on her back was caused by the defendant throwing her phone at her back, and the bruise on her eye was caused by the defendant basically poking her in the eye. [¶] All of that is a direct application of force. And each of those incidents caused a wound or an injury to her."

Defense counsel asserted in closing argument that not all Denise's injuries occurred before she ran from apartment 25 because "[w]hen she went over to Consuelo's apartment, she had the phone thrown at her." During rebuttal argument, however, the prosecutor correctly pointed out the phone-throwing incident occurred *before* Denise left

12

apartment 25. The prosecutor also argued: "When she was bitten on the hand, I asked her a specific question . . . I asked her . . . . [d]id she receive any injury? She said no. That is important. Why? Because you heard the element for count number 1, domestic violence. In order for there to be a domestic violence, there must be a traumatic condition. When she was . . . in Consuelo's apartment, she was slapped, she suffered no bruises. When she was being pulled, she incurred no bruises. When she was bit, she suffered no injury. [¶] If she had suffered a traumatic condition in Consuelo's apartment, you would have had two counts of domestic violence because once she fled and got to safety [in Consuelo's apartment], that first incident was completed."

Hence, the evidence clearly establishes that Soto finished committing the crime of corporal injury to a cohabitant *before* he gained access to apartment 12 and seized Denise in order to commit the kidnapping. We therefore reject Soto's argument that the asportation of Denise was merely incidental to the domestic violence crime alleged in count 1. Because the associated crime of corporal injury to a cohabitant had already been committed at the time of Soto's movement of Denise, the failure to instruct on incidental movement was not error. (See *People v. Delacerda* (2015) 236 Cal.App.4th 282, 291 [trial court did not err in failing to instruct on kidnapping as possibly incidental to assault with a firearm because the assault "was complete before the movement which comprised the kidnapping began" and "[c]onsequently, this act was not an associated crime as a matter of fact"].)

The trial court did not err in failing to instruct the jury to consider whether the alleged kidnapping was merely incidental to the crime of corporal injury to a cohabitant. Soto's theory of the case was not "supported by the law and evidence." (*People v. Bell*, *supra*, 179 Cal.App.4th at 434.) The jury was properly instructed on " ' "the general principles of law relevant to the issues raised by the evidence" and "which [were] necessary for the jury's understanding of the case." ' " (*People v. Breverman*, *supra*, 19 Cal.4th at p. 154.)

13

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.


We concur:


KITCHING, J.


EGERTON, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.



EXHIBIT "A"

15



EXHIBIT "B"

16





EXHIBIT "C"

17