Filed 3/14/22  P. v. Avery CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

|  |  |
|---|---|
| THE PEOPLE, | C091456 |
| Plaintiff and Respondent, | (Super. Ct. No. STKCRFE20190007512) |
| v. | |
| STERLING LAMONT AVERY, | |
| Defendant and Appellant. | |

Defendant Sterling Lamont Avery was in a relationship with Jessica Mathis for about 18 months before they broke up.  Mathis began dating Aaron Ramsey–the victim in this case–after the breakup, and Ramsey soon moved in with Mathis.  About a month later, Ramsey was shot and killed by a man at a gas station.  Mathis, who witnessed the killing, did not identify the killer at the preliminary hearing but at trial identified defendant as the perpetrator.

1

Following a jury trial, defendant was convicted of first degree murder (Pen. Code, § 187, subd. (a))[1] with an enhancement for personally and intentionally discharging a firearm, causing great bodily injury or death (§ 12022.53, subd. (d)). The trial court sentenced defendant to 50 years to life.

On appeal, defendant contends: (1) evidence of threats to Mathis was erroneously admitted; (2) evidence of the victim's gang membership and of Mathis' juvenile record was improperly excluded; (3) the prosecutor engaged in misconduct during the closing argument; (4) it was prejudicial error to instruct the jury on a witness' prior felony conviction and in failing to instruct the jury on Mathis' attempting to conceal an illegal firearm belonging to the victim Ramsey; (5) remand is necessary to let the trial court exercise its discretion regarding the gun enhancement; and (6) the presentence credits were improperly calculated.

The evidence of prior threats to Mathis was relevant to her refusal to identify the killer at the preliminary hearing and was not impermissibly prejudicial. There was no abuse of discretion in finding Ramsey's gang membership was not relevant as there was no evidence of gang involvement in the murder. It was within the trial court's discretion to exclude the juvenile incidents involving Mathis, which took place 15 years before the trial, and had not resulted in any adjudication. The prosecutorial misconduct claim is both forfeited and without merit, as are defendant's claims regarding instructional error. While there is no evidence that the trial court failed to understand its discretion regarding the gun enhancement, the trial court did fail to credit defendant for time served before the charges were refiled. We shall modify the award of credits and affirm the modified judgment.

---

[1] Undesignated statutory references are to the Penal Code.

2

## FACTUAL AND PROCEDURAL BACKGROUND

### *Prosecution Case*

Jessica Mathis began dating defendant in May 2016. Defendant moved in with Mathis and her two children in a Stockton apartment. Mathis subsequently obtained another apartment, which she put in her name.

The relationship ended in January 2018, but defendant and Mathis kept in contact. Mathis moved to the other apartment while defendant remained in the apartment they had shared. Mathis started dating Aaron Ramsey; he moved in with Mathis soon after they started dating.

On February 10, 2018, Mathis and Ramsey were outside their apartment, talking by Mathis' car, when defendant approached them and said he needed a ride to work. As Ramsey walked to his car, defendant asked Mathis if Ramsey was her new boyfriend. Defendant "flinched" at Mathis as if he wanted to hit her but did not touch her. Ramsey told defendant not to put his hands on Mathis.

Ramsey's intervention led to an argument between defendant and Ramsey, which escalated to a fist fight. When a friend or brother of Ramsey pulled up during the fight, Ramsey asked the person to "give me the gun." Defendant replied, "oh, so you're going to shoot me? You want to shoot me?" Defendant then jumped into Mathis' car and drove away without obtaining her permission to take the car.

Mathis called defendant several times that day, asking him to return her car. Defendant promised to return the car but never did. He told Mathis he had wrecked the car but did not tell her where it happened. Mathis told defendant she would report the car as stolen. When she reported the car as stolen to the Stockton police, she falsely reported that defendant had a gun when he took the car. She lied about the gun to give defendant a "wake-up call" and because she did not want defendant to hurt Ramsey. Mathis recovered her car about two weeks later.

3

On February 19, 2018, Mathis and Ramsey left their apartment for work in a borrowed car. Ramsey stopped at a nearby Chevron gas station to put air in one of the tires. He pulled up next to an air pump and went into the store at the gas station, while Mathis stayed in the car. Mathis had her head down as she was writing in her work journal when she heard shots fired; they sounded very loud, as if nearby. She looked up to see Ramsey running in front of the car. Ramsey was then shot in the back and fell to the ground, where he was shot a few more times.

Mathis jumped out of the car and ran to Ramsey. The shooter, defendant,[2] ran towards the back of the car. While defendant wore a hooded sweatshirt with the hood pulled tight over his hair, defendant's face was not covered, and Mathis could see his face in profile. Defendant rode away down Fremont Street on a bicycle.

Steven Siu was making a delivery at the Chevron gas station that day when he heard several gunshots while he was inside the back of his truck. Shelly Stanful was stopped at a traffic light at the corner where the gas station was located when she too heard three or four gunshots close by. Stanful then heard a scream followed by four or five more shots. Siu and Stanful both saw a person run around the side of the gas station and leave on a bicycle. The person was wearing a hooded sweatshirt and dark pants and was about 5 feet 8 inches tall with a slight build.

Mathis stayed with Ramsey until the paramedics arrived and she moved the car out of the way. When moving the car, Mathis hid a gun that Ramsey had under the front seat. The gun remained in the car during the entire incident; Mathis did not tell the police about the gun to keep Ramsey out of trouble.

---

[2] Mathis admitted she did not identify defendant at the preliminary hearing because she felt bad for him, as the defendant and Ramsey had been in "bad situations" because of her. She had also been threatened by defendant's and Ramsey's families. Mathis also identified defendant in still photographs from surveillance cameras at the Chevron gas station.

When the police arrived, they directed Mathis to stop the car and asked if she knew who shot Ramsey. Mathis said she did not know because she wanted to go to the hospital with Ramsey. She was eventually allowed to go to the hospital with Ramsey's brother.

Ramsey was pronounced dead at the hospital. He sustained nine gunshot wounds, three of which were fatal, individually or in combination.

At the scene, officers collected .45-caliber shell casings of various brands, including Federal, Winchester, and PMC. Ramsey's gun was found in the borrowed car. It was a .9mm semi-automatic with an illegal extended magazine and could not have fired the .45-caliber rounds found at the scene. Surveillance footage from the Chevron gas station and stills from the video were shown to the jury.

Defendant was arrested at his home on the day of the shooting. A swab of his hands revealed gunshot residue, indicating a fairly recent exposure. Forty-five caliber ammunition was found in the apartment. The ammunition included 24 live rounds of the Federal brand and one live round of Nosler brand.

### Defense

Latent fingerprints on an ammunition box in defendant's home did not match defendant's. Clothes found in his home contained DNA from at least four contributors. The number of contributors precluded comparison of individual samples.

Ron Beegle testified as an expert on cell phone digital forensics. The cell phone data from defendant's phone on February 19, 2018, showed it was not possible for his phone to be at the scene of the shooting.

### Stipulations

Defendant's phone made 55 outgoing calls to Mathis' phone between January 1, 2018, and February 19, 2018. Mathis' phone made 54 outgoing calls to defendant's phone. Defendant's last call to Mathis' phone was made on February 18, 2018, at 11:14 a.m. Mathis called 911 at 11:06 a.m. on February 19, 2018.

5

DISCUSSION

I

*Evidence of Threats*

Defendant contends the trial court prejudicially erred in admitting evidence that Mathis had been threatened.

*A. Background*

During cross-examination, Mathis testified that she told the detective at the hospital that she saw defendant's face but was not sure if he was actually there or because he was weighing "so heavy" on her mind. Her testimony at the preliminary hearing was the same as what she had told the detective. Mathis testified that she was lying when she expressed this uncertainty, and her trial testimony identifying defendant as the shooter was the truth.

During redirect, the prosecutor asked Mathis if she remembered being asked at the preliminary hearing if she was afraid to identify defendant as the shooter. After the trial court overruled defense counsel's relevancy and hearsay objections, Mathis testified that she did not remember being asked about being afraid.

Defense counsel requested a bench conference while Mathis reviewed the preliminary hearing transcripts. At the bench conference, the prosecutor indicated he wanted to present evidence that Mathis was threatened, and this was why she had been afraid to make the identification. After the trial court ruled such evidence was relevant to Mathis' credibility by providing a motive for her to lie at the preliminary hearing, the defense raised the additional relevancy objection that the threats had not kept her from making the identification. The trial court overruled the objection.

Mathis then testified that at the preliminary hearing, she had testified to receiving threats from some of the victim's family and some from the defendant. She also testified on redirect that the threats had affected her "[s]omewhat" at the preliminary hearing because "[i]t's just a bad situation to be in. You know, I don't want one of my kids to get

6

hurt on accident because of the situation I put myself in. So that part bothers me." On cross-examination, she stated that the threats "had a part in" influencing her identification testimony at the preliminary hearing. She also admitted not reporting the threats to the police and testifying at the preliminary hearing that the threats had kept her from making a positive identification of the shooter.

B. Analysis

Defendant contends the evidence of threats should have been excluded pursuant to Evidence Code section 352.

The Attorney General asserts that while defense counsel raised relevancy objections, counsel never asserted the evidence was inadmissible under Evidence Code section 352, forfeiting the contention on appeal. (See *People v. Barnett* (1998) 17 Cal.4th 1044, 1130 [objection asserting only relevancy without further amplification will not preserve an Evidence Code section 352 claim on appeal].) However, "counsel's lack of express reference to Evidence Code section 352 is not itself fatal to defendant's claim. . . ." *(People v. Kirkpatrick* (1994) 7 Cal.4th 988, 1014-1015, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) On the record before us, however, we do find forfeiture.

During argument on the admissibility of the threat evidence, defense counsel stated: "And Sterling she said he had threatened her. So I don't want to go down that road where we get into that. She said she received threats from the victim's family. And I think she also said she got threats from people who knew Sterling." Defendant asserts the statement, "I don't want to go down that road where we get into that" along with the remaining argument was sufficient to preserve the Evidence Code section 352.

We disagree. Counsel apparently "did not want to go down the road" regarding Sterling (defendant's first name) threatening Mathis. Counsel's remarks do not rise to the level of an Evidence Code section 352 objection, as also demonstrated by the trial court's statements during its ruling on the objection to that testimony. Shortly after defense

7

counsel made the "did not want to go down the road" remark, the trial court ruled, "That's relevant. Because you brought up the fact that she's lied. And if she has a motive for lying, that's relevant. If you object, it's going to be overruled. Because it's relevant." After defense counsel made additional arguments regarding relevancy, the trial court ruled, "It's still going to be, if you object, I'm going to allow it. And you can cross on that."

The trial court never addressed any prejudicial effect of the testimony, ruling only on its relevance because defendant never raised an Evidence Code section 352 objection. Since defendant now correctly admits that the evidence was relevant (see *People v. Burgener* (2003) 29 Cal.4th 833, 869 ["[e]vidence that a witness is afraid to testify or fears retaliation for testifying is relevant to the credibility of that witness and is therefore admissible"]), his contention, which is based on the alleged prejudicial effect of the evidence, is forfeited. (See Evid. Code, § 353, subd. (a); *People v. Alexander* (2010) 49 Cal.4th 846, 912 [failure to object to introduction of evidence forfeits claim evidence was improperly admitted].)

II

*Exclusion of Defense Evidence*

Defendant claims the trial court prejudicially erred in two rulings excluding defense evidence, namely the victim Ramsey's gang membership and uncharged crimes committed by Mathis when she was a juvenile.

*A. Background*

Defendant moved pretrial to admit evidence that Ramsey was a documented gang member, asserting that most people are not targets of violence, but if the jury knew Ramsey was a gang member, "then it doesn't become such a fantastic idea that someone else might shoot him in broad daylight in these circumstances. . . [¶] . . . [W]hen people are in gangs, we know that sometimes they are subjected to random acts of violence like this." The trial court likened this to third-party culpability evidence and denied the

8

motion, finding "there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime." It also denied the motion as the gang evidence was more prejudicial than probative.

An Evidence Code section 402 hearing was held during Mathis' cross-examination. At the hearing, Mathis testified that when she was 16 or 17 years old, she robbed a woman of her purse by using a fake gun. During the incident, the victim's car was stolen. She also participated in a residential burglary at that time.

Defense counsel sought to cross-examine Mathis about whether she had participated in the robbery and whether she had burglarized a friend's foster parents. The prosecutor objected on remoteness grounds. The trial court excluded the evidence of Mathis' juvenile misconduct pursuant to Evidence Code section 352.

*B. Analysis*

Defendant claims it was an abuse of the trial court's discretion under Evidence Code section 352 to exclude evidence of the victim's gang membership and of Mathis' juvenile misconduct, and that the exclusion of this evidence deprived him of his due process right to present a defense and his right to confrontation.

Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." An appellate court reviews a trial court's rulings under Evidence Code section 352 for abuse of discretion and will reverse only if the court " ' "exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." [Citation.]' [Citation.]" (*People v. Merriman* (2014) 60 Cal.4th 1, 74.)

"[E]vidence of mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt: there must be direct or circumstantial evidence linking the third person to the actual

9

perpetration of the crime." (*People v. Hall* (1986) 41 Cal.3d 826, 833.) There was no evidence of gang involvement in Ramsey's killing, and no evidence of any motive for the killing other than defendant's jealousy against his ex-girlfriend's new boyfriend. The mere fact that the victim was a gang member, without more, makes the offered evidence at most minimally relevant. Our Supreme Court has warned against the introduction of "evidence of gang membership if only tangentially relevant, given its highly inflammatory impact." (*People v. Cox* (1991) 53 Cal.3d 618, 660, disapproved on other grounds in *People v. Doolin, supra*, 45 Cal.4th at p. 421, fn. 22.) Such is the case here. Given its real threat of prejudice and minimal relevance, it was not abuse of discretion to exclude the gang evidence. (See *People v. Edelbacher* (1989) 47 Cal.3d 983, 1018 [exclusion of evidence of victim's Hell's Angels membership proper as the "evidence did not identify a possible suspect other than defendant" and "did not even establish an actual motive but only a possible or potential motive for [the victim's] murder"].)

We are likewise unconvinced by the contention regarding defendant's attempt to cross-examine Mathis regarding her misdeeds as a juvenile. "Cross-examination is subject to restriction under Evidence Code section 352 if it is cumulative or if it constitutes impeachment on collateral issues. [Citations.]" (*People v. Greenberger* (1997) 58 Cal.App.4th 298, 352.) Mathis was nearly 32 years old when she testified, rendering the juvenile misconduct remote and unconnected to the conduct at issue in this case. The defense also had ample opportunity to cross-examine her regarding much more relevant, less tangential issues such as the inconsistencies regarding her identification of the killer, as well as her attempts to conceal Ramsey's illegal firearm from the police. Impeachment with other than a felony conviction contains "problems of proof, unfair surprise, and moral turpitude evaluation which felony convictions do not present. Hence, courts may and should consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value." (*People v. Wheeler* (1992) 4 Cal.4th 284, 296-297, fn. omitted.) It

10

was also within the trial court's discretion to prevent cross-examination regarding this tangential evidence with a clear potential for prejudice.

Neither of the trial court's rulings implicate defendant's constitutional rights. A defendant's constitutional right extends only to the presentation of relevant and material evidence. (*Washington v. Texas* (1967) 388 U.S. 14, 23 [18 L. Ed. 2d 1019, 1025]; *People v. Babbitt* (1988) 45 Cal.3d 660, 684.) Unless a particular rule of evidence is itself unconstitutional, a court's evidentiary rulings do not, as a general matter, impermissibly infringe on the accused's right to present a defense. (*People v. Boyette* (2002) 29 Cal.4th 381, 414.) Rather, courts retain "a traditional and intrinsic power to exercise discretion to control the admission of evidence in the interests of orderly procedure and the avoidance of prejudice. [Citations.]" (*People v. Hall, supra*, 41 Cal.3d at p. 834.) Likewise, " ' "[a]lthough completely excluding evidence of an accused's defense theoretically could rise to [the level of a constitutional violation], excluding defense evidence on a minor or subsidiary point does not impair an accused's due process right to present a defense." ' [Citation.]" (*People v. Lucas* (2014) 60 Cal.4th 153, 279, disapproved on other grounds in *People v. Romero and Self* (2015) 62 Cal.4th 1, 53, fn. 19.) Exclusion of the minimally relevant, prejudicial gang evidence did not deprive defendant of his right to present a defense.

" 'In particular, notwithstanding the confrontation clause, a trial court may restrict cross-examination of an adverse witness on the grounds stated in Evidence Code section 352.' [Citation.] ' "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. [Citation.]" [Citations.] The confrontation clause allows "trial judges . . . wide latitude . . . to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." [Citation.] In other words, a trial court may restrict cross-

examination on the basis of the well-established principles of Evidence Code section 352, i.e., probative value versus undue prejudice. [Citation.] There is no Sixth Amendment violation at all unless the prohibited cross-examination might reasonably have produced a significantly different impression of credibility.' [Citation.]" (*People v. Ardoin* (2011) 196 Cal.App.4th 102, 119, italics omitted, disapproved on other grounds in *People v. Dalton* (2019) 7 Cal.5th 166, 214.) Per *Ardoin,* preventing the main prosecution witness from being cross-examined on a nearly 15-year-old juvenile misconduct tangential to the case and not significantly affecting her credibility did not violate defendant's confrontation rights.

III

*Alleged Prosecutorial Misconduct*

Defendant's third claim is that the prosecutor committed misconduct during the closing argument by vouching for a witness and misstating the evidence.

*A. Background*

During the closing argument, while discussing witness testimony, the prosecutor stated:

"You heard from Stephen Siu and Shelley Stanful. And they told you what they remembered. They came in. They were civilians. Just happened to be there. Some of the few who actually gave statements.

"You noticed that parking lot was full. Unfortunately, a lot of people don't want to stick around and talk. You can't do anything about that. But we do know that these two talked. And Stephen Siu was in the back of his—he was in the back of his truck unloading, delivering, trying to get a load ready when the shooting started.

"And you could tell he was still a little bit shook up when he had to testify about this. And he told you how he still goes to that Chevron and thinks about it. He was being truthful. And he told you he heard a series of shots. A couple of series."

While addressing Mathis' testimony, the prosecutor argued:

12

"If you think about it, Jessica, with the stolen car, she lied she wanted to get her car back. She tried to get her car back that day after they got in a fistfight. Aaron and the Defendant. And he took off in the car. She tried to get the car back and she couldn't. And she reported it basically as a carjacking. The Defendant shows up with a gun and forcibly takes her car. And she told you why. Because things were getting out of control, I think, is how she put it.

"It was getting out of control between the Defendant, Aaron and her. It was causing issues with her relationship. So that's why she did it. And she even said, yeah, I wanted him to go to jail. Maybe it would cool him off. Settle things down. That doesn't mean she lied the day of the shooting, or lied about her identification of the Defendant."

The defense did not object to either argument.

During closing arguments, defense counsel told the jury: "[I]t's up to you to determine someone's credibility. My opinion of someone's credibility is not binding, honestly. I'm not permitted to give you my opinion of her credibility. Because, frankly, it's not relevant. [¶] You are the ones who determine credibility."

When the closing argument concluded, the trial court said it was concerned the prosecutor had "said that the delivery guy was being truthful. I'm going to reiterate to them that's their job to evaluate credibility." Defense counsel did not comment on the trial court's remark.

Before reading the jury instructions, the trial court told the jury: "During the closing statements, I heard a statement regarding the—I forgot his name. But I'll call him the delivery guy who was at the Chevron station testify that he was being truthful. It's not the job of the attorneys. And you do not accept what the attorneys say regarding who is truthful as a witness. As jurors, that is your job to determine the truthfulness or the credibility of the witness."

13

*B. Analysis*

The law governing claims of prosecutorial misconduct is well established. Prosecutorial misconduct exists " 'under state law only if it involves 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.' " ' [Citations.]" (*People v. Earp* (1999) 20 Cal.4th 826, 858.) In more extreme cases, a defendant's federal due process rights can be violated when a prosecutor's improper remarks so infect the proceedings that it renders the trial fundamentally unfair. (*Ibid.*) On appeal, "[t]o prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we 'do not lightly infer' that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements." (*People v. Frye* (1998) 18 Cal.4th 894, 970, overruled on another ground in *People v. Doolin, supra*, 45 Cal.4th 390, 421, fn. 22.)

Nevertheless, " ' "[a]s a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety." ' [Citation.]" (*People v. Huggins* (2006) 38 Cal.4th 175, 251-252.) An exception to this rule provides "[a] defendant will be excused from the necessity of either a timely objection and/or a request for admonition if either would be futile. [Citations.]" (*People v. Hill* (1998) 17 Cal.4th 800, 820.) Similarly, failure to request the jury be admonished does not forfeit the issue for appeal if " ' "an admonition would not have cured the harm caused by the misconduct." ' [Citation.]" *(Ibid.)*

Defendant has not established that an objection or request for admonition would have been futile. Indeed, the trial court admonished the jury sua sponte to disregard any arguments about witnesses' credibility and to reach its own conclusions in that regard.

Defendant's contention is accordingly forfeited. Anticipating our ruling, defendant claims the failure to object constituted ineffective assistance of counsel.

To win reversal for ineffective assistance of counsel, a defendant must show both that counsel performed below professional norms of competence and that defendant was reasonably likely to have obtained a more favorable result absent counsel's incompetence. (*People v. Maury* (2003) 30 Cal.4th 342, 389.)

Defendant claims the prosecution's argument regarding Siu amounted to impermissible vouching for Siu's credibility. "A prosecutor is prohibited from vouching for the credibility of witnesses or otherwise bolstering the veracity of their testimony by referring to evidence outside the record. [Citations.] Nor is a prosecutor permitted to place the prestige of her office behind a witness by offering the impression that she has taken steps to assure a witness's truthfulness at trial. [Citation.] However, so long as a prosecutor's assurances regarding the apparent honesty or reliability of prosecution witnesses are based on the 'facts of [the] record and the inferences reasonably drawn therefrom, rather than any purported personal knowledge or belief,' her comments cannot be characterized as improper vouching. [Citations.]" (*People v. Frye, supra*, 18 Cal.4th at p. 971.)

As the trial court determined, the prosecutor came close to this line when he told the jury the witness "was being truthful" without an obvious reference to evidence that directly supported that inference. However, any remote possibility that the jury could have understood the argument to be vouching rather than merely an observation regarding the state of the record was remedied by the trial court's timely and direct admonition to counter any such misunderstanding by any juror.

As for the other alleged instance of misconduct, defendant claims the prosecutor misstated the evidence by claiming defendant "used a firearm to 'carjack' Ms. Mathis car," an assertion not supported by the record. He notes that Mathis did not testify that

15

defendant had a gun when he took her car and did not see a gun on the day when her car was taken.

This claim takes the prosecutor's statement out of context. The prosecutor argued as follows: "And she reported it basically as a carjacking. The Defendant shows up with a gun and forcibly takes her car. And she told you why. Because things were getting out of control, I think, is how she put it." The prosecutor followed this by stating: "It was getting out of control between the Defendant, Aaron and her. It was causing issues with her relationship. So that's why she did it. And she even said, yeah, I wanted him to go to jail. Maybe it would cool him off. Settle things down That doesn't mean she lied the day of the shooting, or lied about her identification of the Defendant. I mean, it doesn't make any sense when she says that there was an issue. She wanted to diffuse it. And her boyfriend is shot dead in front of her."

This accurately states that Mathis reported defendant's taking of her car as a carjacking and the reasons she gave for doing this. Rather than asserting defendant carjacked Mathis' car, the argument implicitly asserts Mathis lied when she told the police defendant used a gun to take her car. This is not misconduct.

Since to the extent the prosecutor made one comment that could possibly be misconstrued by the jury as vouching it was quickly countered by the trial court, counsel was not ineffective in failing to object to the arguments in question. "Counsel is not ineffective for failing to make frivolous or futile motions." (*People v. Thompson* (2010) 49 Cal.4th 79, 122.) Such is the case here.

IV

*Alleged Instructional Error*

Defendant claims the trial court prejudicially erred by giving a pre-instruction that informed the jury it could consider a felony conviction in assessing a witness' credibility and the trial court also prejudicially erred in failing to instruct on consciousness of guilt through suppression of evidence.

16

*A. Standard*

A trial court has a sua sponte duty to instruct the jury on the general principles of law governing the case, which include those principles of law closely and openly connected with the facts of the case and necessary to the jury's understanding of the case. (*People v. Michaels* (2002) 28 Cal.4th 486, 529-530.) "A 'criminal defendant is entitled to adequate instructions on the defense theory of the case' if supported by the law and evidence. [Citation.]" (*People v. Bell* (2009) 179 Cal.App.4th 428, 434.)

On appeal, we review the wording of a jury instruction de novo and determine whether the instructions are complete and correctly state the law. (*People v. Bell, supra*, 179 Cal.App.4th at p. 435.) We examine the entire charge of the trial court to determine whether the instructions are adequate, and whether it is reasonably likely that the instructions as a whole caused the jury to misapply the law. (*People v. Cain* (1995) 10 Cal.4th 1, 36.

"[F]ailure to object to instructional error forfeits the objection on appeal unless the defendant's substantial rights are affected. [Citations.] 'Substantial rights' are equated with errors resulting in a miscarriage of justice under *People v. Watson* (1956) 46 Cal.2d 818. [Citation.]" (*People v. Mitchell* (2008) 164 Cal.App.4th 442, 465.)

*B. CALCRIM No. 105*

Among the pre-instructions given to the jury before the presentation of evidence was CALCRIM No. 105, which listed various factors a jury considers when assessing the credibility of a witness, including "[h]as the witness been convicted of a felony?"

When the trial court instructed the jury with CALCRIM No. 105 during final instructions, the reference to considering a felony conviction was omitted. The jury was also instructed that it could consider "other conduct that reflects on his or her believability." Defendant did not object to either version of CALCRIM No. 105.

Defendant claims the pre-instruction version of CALCRIM No. 105 was erroneous because it informed the jury that it could consider a felony conviction in determining a

17

witness' credibility despite that there was not a witness who had a felony conviction. He claims the pre-instruction prejudiced him by creating the impression that someone had a felony record even though he had no prior convictions, and the jury was never informed of Mathis' juvenile record of felony conduct. He claims this was bound to prejudice the jury, particularly in light of the vacillating nature of Mathis' accusations.

Since defendant did not object to the instructions, we consider the claim only if the alleged error affected defendant's substantial rights. The trial court included the reference to felony convictions in the pre-instruction version of CALCRIM No. 105, which was given before the witnesses testified and it could be determined whether any of them had a felony conviction. As no evidence of a witness' felony conviction was presented at trial, the reference to felony convictions was omitted from the final version of the CALCRIM No. 105 instruction. The jury was also instructed at that time with CALCRIM No. 200 to "[d]isregard any deleted sections" of an instruction and "[o]nly consider the final versions of your instructions in your deliberations."

We presume the jurors followed the instruction to disregard the deleted sections and to consider only the final versions given to them. (*People v. Boyette, supra*, 29 Cal.4th at p. 436.) There is thus no chance the different versions of CALCRIM No. 105 given here adversely affected defendant's substantial rights.

*C. CALCRIM No. 371*

Defendant claims the trial court should have given a modified version of CALCRIM No. 371 to address Mathis' hiding Ramsey's gun when the police arrived following the murder.

CALCRIM No. 371 addresses a defendant's or an associate of defendant's suppression or fabrication of evidence as evidence of guilt.[3] There is no sua sponte duty

---

[3] CALCRIM No. 371 states in pertinent part: "If the defendant tried to hide evidence or discourage someone from testifying against (him/her), that conduct may show that

18

to instruct on consciousness of guilt as to non-defendants, so any such instruction must be requested by the defense. (*People v. Henderson* (2003) 110 Cal.App.4th 737, 744.) The failure to request a pinpoint instruction forfeits the claim on appeal. (*People v. Jones* (2014) 223 Cal.App.4th 995, 1001.)

Defendant claims the forfeiture is the result of ineffective assistance of counsel. The evidence would not support an instruction had it been requested. Defendant claims "if Ramsey displayed his gun just before the shooting, the fault could lie with him rather than appellant, and Mathis could have had a motive to cover that up by giving a false version of the shooting." There is no evidence Ramsey displayed the gun at any point during the incident. A request for the modified instruction on these grounds would have been denied. Since the instruction was not warranted, the failure to request it does not constitute ineffective assistance of counsel.

V

*Section 12022.53 Discretion*

When the trial court imposed the 25 years to life term for the section 12022.53, subdivision (d) firearm enhancement, it did not address its discretion to strike the term. (See § 12022.53, subd. (h) ["[t]he court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section"].) No mention of the trial court's discretion was made in the probation report.

Defendant contends we must remand for resentencing so the trial court can exercise its discretion on whether to strike the enhancement. Defendant did not bring up any alleged failure of the trial court to exercise or understand its discretion, forfeiting the contention. (*People v. Trujillo* (2015) 60 Cal.4th 850, 856.) The claim is also without

(he/she) was aware of (his/her) guilt. If you conclude that the defendant made such an attempt, it is up to you to decide its meaning and importance. However, evidence of such an attempt cannot prove guilt by itself."

merit.  "Absent evidence to the contrary, we presume that the trial court knew and applied the governing law.  [Citation.]" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1390.)  There is no evidence in the record that the trial court either did not understand or failed to exercise its discretion on whether to strike the enhancement.[4]  We accordingly presume the trial court understood its discretion to strike the enhancement and declined to do so here.

VI

*Presentence Credits*

The trial court awarded 242 days of presentence custody credit.  Defendant was arrested on February 19, 2018, and sentenced on January 27, 2020, for a total of 707 days of presentence custody.  Defendant identifies this error and the Attorney General agrees.  We shall modify the award of credits to correct the error.

---

[4] The jury was never instructed on the lesser firearm enhancements.  Defendant claims for the first time in his reply brief that the trial court also had the discretion to not just strike the enhancement, but also modify it to a lesser uncharged enhancement under section 12022.53.  The trial court's discretion to strike the enhancement and impose the lesser term was first recognized in a 2019 appellate decision.  (See *People v. Morrison* (2019) 34 Cal.App.5th 217, 220 [the trial court has discretion to impose lesser enhancement].)  Defendant, admits the basis for this claim, *Morrison*, was decided before sentencing.  The claim is therefore forfeited by his failure to raise it at trial.  The claim is also forfeited because defendant did not raise it until the reply brief.  (*Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 761, fn. 4.)  The Supreme Court agreed with the *Morrison* decision in a case decided after briefing was concluded.  (*People v. Tirado* (2022) 12 Cal.5th 688, 692.)  The fact that the Supreme Court has since confirmed that the trial court has the authority to impose the lesser term does not change the fact that this argument was available to defendant at the time of sentencing and his failure to raise it at sentencing or in his opening brief on appeal forfeits the contention on appeal.

## DISPOSITION

The award of presentence credits is modified to 707 days. As modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment reflecting the modification and to forward a certified copy to the Department of Corrections and Rehabilitation.

           \s\_____,
           BLEASE, Acting P. J.

We concur:

   \s\_____,
DUARTE, J.

   \s\_____,
KRAUSE, J.