Filed 9/24/25  P. v. Namowics CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>NICOLAS NAMOWICS,<br><br>    Defendant and Appellant. | H052004<br>(Santa Clara County<br>Super. Ct. No. C1651877) |

A jury found defendant Nicolas Namowics guilty of second degree murder and attempted murder.  The jury further found that Namowics personally and intentionally discharged a firearm in the commission of both offenses.  The trial court imposed an aggregate sentence of 15 years to life consecutive to 20 years in prison.

Namowics raises two claims on appeal.  First, he contends the trial court erroneously instructed the jury on the elements of implied malice murder.  For the reasons below, we conclude this claim is without merit.

Second, Namowics contends the abstract of judgment should be corrected to clarify that the trial court stayed fines and fees pending a showing of his ability to pay them.  We order the abstract of judgment to be corrected accordingly, and we affirm the judgment.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Procedural Background

The prosecution charged Namowics with two counts: count 1—murder (Pen. Code, § 187, subd. (a))[1]; and count 2—attempted murder (§§ 187, 664, subd. (a)). As to both counts, the prosecution further alleged Namowics personally and intentionally discharged a firearm. (§ 12022.53, subds. (c) & (g).)

The jury found Namowics guilty of second degree murder on count 1 and attempted murder on count 2. On both counts, the jury found true the firearm allegations, and on count 2 the jury found not true the allegation that the attempted murder was premeditated. The trial court imposed an aggregate sentence of 15 years to life consecutive to 20 years in state prison.

## B. Facts of the Offenses

Around 2 a.m., Namowics, Jose Eduardo Perez, and Jose Maria Perez were walking together after attending a Halloween party. Justino Ortiz and Giancarlo Villalobos, who were also at the party, were walking in the same area. Namowics saw Ortiz and Villalobos, and told Jose Eduardo Perez that he had "seen those fools," and "they're right there," referring to a fight that had taken place at the party. Namowics aggressively said, "fuck you, what's up," to Ortiz and Villalobos.

Soon thereafter, Namowics took out a nine-millimeter semi-automatic firearm and began firing at Ortiz and Villalobos. Namowics fired seven rounds. He missed Villalobos and Ortiz but struck Jose Eduardo Perez. When the bullet fired by Namowics struck Jose Eduardo Perez, Jose Eduardo Perez mistakenly thought Villalobos or Ortiz was shooting at him, so he began shooting towards Villalobos and Ortiz. Two of the bullets fired by Jose Eduardo Perez struck Villalobos, killing him. Namowics, Jose Eduardo Perez, and Jose Maria Perez then ran to a nearby car and drove away.

---

[1] Subsequent undesignated statutory references are to the Penal Code.

## II. DISCUSSION

### A. *Jury Instructions on the Elements of Second Degree Murder*

Namowics contends the trial court erroneously instructed the jury on one of the elements required for implied malice murder—specifically, that the natural and probable consequences of the act that resulted in the death were dangerous to human life "in that the act involved a high degree of probability that it would result in death." The Attorney General contends the trial court properly instructed the jury on that element, and that regardless, any error was harmless beyond a reasonable doubt.

#### 1. *Legal Principles*

"Murder is the unlawful killing of a human being, or a fetus, with malice aforethought. [Citation.] Malice may be express or implied. [Citation.]" (*People v. Knoller* (2007) 41 Cal.4th 139, 151.) "Murder is committed with implied malice when 'the killing is proximately caused by " 'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.' " ' [Citation.]" (*People v. Reyes* (2023) 14 Cal.5th 981, 988 (*Reyes*).) "To suffice for implied malice murder, the defendant's act must not merely be dangerous to life in some vague or speculative sense; it must ' "involve[ ] a high degree of probability that it will result in death." ' [Citations.]" (*Id.* at p. 989.)

"A trial court bears a sua sponte duty to instruct the jury on the essential elements of an offense . . . ." (*People v. Bell* (2009) 179 Cal.App.4th 428, 434.) "The independent or de novo standard of review is applicable in assessing whether instructions correctly state the law . . . ." (*People v. Posey* (2004) 32 Cal.4th 193, 218.) " ' "[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction." ' " (*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1248 (*Musselwhite*).)

3

### 2. *Jury Instructions on Implied Malice Murder*

The trial court instructed the jury on implied malice as follows: "The defendant had implied malice if, one, he intentionally committed an act. [¶] Two, the natural and probable consequence[s] of the act were dangerous to human life. [¶] Three, at the time he acted he knew his act was dangerous to human life. [¶] And, four, he deliberately acted with conscious disregard for human life. [¶] Malice aforethought does not require hatred or ill will toward the victim. It is a mental state that must be formed before the act that causes death is committed. It does not require deliberation or the passage of any particular period of time. *An act is dangerous to human life if there is a high degree of probability that the act will result in death.*" (Italics added.)

### 3. *The Trial Court Properly Instructed the Jury on Implied Malice*

Both parties agree that under an implied malice theory of murder the jury was required to find that the act that caused death to another person was "dangerous to human life" in that there was "a high degree of probability" that the act would result in death. In 2023, the California Supreme Court reaffirmed this principle in *Reyes*, *supra*, 14 Cal.5th 981. In 2024, following *Reyes*, CALCRIM No. 520 was revised in relevant part to instruct the jury on implied malice as follows: "The natural and probable consequences of the [act] were dangerous to human life in that the [act] involved a high degree of probability that it would result in death."

The trial court here instructed the jury in January 2024, after *Reyes* was issued but before CALCRIM No. 520 was modified. As a result, the trial court's instruction did not include the modified language in the exact same form. Namowics asserts the trial court erroneously instructed the jury only that "the natural and probable consequence[s] of the act were dangerous to human life," omitting the language requiring the jury to find the act "involved a high degree of probability that it would result in death." As the Attorney General points out, however, the trial court *did* instruct the jury with this language several sentences later. After instructing the jury on the remaining elements of implied malice,

4

the court expressly instructed the jury, "An act is dangerous to human life if there is a high degree of probability that the act will result in death."

Namowics does not explain how this amounted to instructional error; his opening brief simply ignores the court's issuance of the above-quoted language. Nor does he put forth any argument as to how the jury could have been confused or misled by the court's instructions simply because the court issued the required language several sentences later.

Viewing this language in the context of the instructions as a whole, we perceive no error. " '[T]he fact that the necessary elements of a jury charge are to be found in two instructions rather than in one instruction does not, in itself, make the charge prejudicial.' [Citation.] 'The absence of an essential element in one instruction may be supplied by another or cured in light of the instructions as a whole.' [Citation.]" (*People v. Burgener* (1986) 41 Cal.3d 505, 538-539, disapproved on another ground by *People v. Reyes* (1998) 19 Cal.4th 743.) Considering the instructions in their entirety, the trial court properly instructed the jury on implied malice consistent with *Reyes*. Moreover, there was no ambiguity in the instructional language defining "dangerous to human life" as meaning "a high degree of probability that the act will result in death," so there is no reasonable probability the jury misunderstood or misapplied these instructions. (See *Estelle v. McGuire* (1991) 502 U.S. 62, 72 [the reviewing court determines whether it is reasonably likely a jury misapplied an ambiguous instruction].) Accordingly, we conclude this claim is without merit.

### B. *Correction of the Abstract to Clarify That the Trial Court Stayed Fines and Fees*

At sentencing, the trial court imposed fines and fees including a $300 restitution fund fine (§ 1202.4); a court security fee of $80 (§ 1465.8); and a criminal conviction assessment of $60 (Gov. Code, § 70373). Defense counsel requested that the court waive the fines and fees under *People v. Dueñas* (2019) 30 Cal.App.5th 1157. The court then

stayed the restitution fund fine and the fees pending a showing by the prosecution that Namowics had the ability to pay them.[2]

Section 9 of the abstract of judgment, titled "FINANCIAL OBLIGATIONS," lists the above fines and fees, and an attached page lists other orders, including, "Fines Fees [*sic*] stayed pending showing of defendant's ability to pay by the People."

Namowics contends the fines and fees as listed in section 9 of the abstract of judgment should be deleted because the trial court stayed them, and they are therefore not "financial obligations." The Attorney General contends no corrections or deletions are necessary because the order on the attached page states that the court stayed the fines and fees pending the prosecution's showing of an ability to pay them. Namowics responds that the abstract of judgment is confusing and creates a risk that the Department of Corrections and Rehabilitation will seek to enforce the stayed fines and fees regardless of the order on the attached page.

We agree with Namowics that the abstract of judgment, viewed in its entirety, warrants clarification. For example, notwithstanding the order on the attached page, section 9 of the abstract indicates that the restitution fund fine is to be paid "*forthwith* per PC 2085.5 if prison commitment." (Italics added.) We will order the abstract of judgment corrected as set forth below. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185 [courts may correct clerical errors at any time].)

### III.    DISPOSITION

The judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment by deleting the $300 restitution fine, the $80 court operations assessment, and the $60 conviction assessment from section 9 of the abstract of judgment. The court shall further amend section 13, "Other orders" on "Attachment Page Number: TWO," to list these fines and fees and to state that the trial court imposed and

_____

[2] The court also imposed and suspended a parole revocation restitution fine of $300 (§ 1202.45). The trial court did not order that it be stayed.

6

stayed them pending a showing by the People that Namowics has the ability to pay them. The trial court shall send a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

_____
Greenwood, P. J.

WE CONCUR:


_____
Grover, J.


_____
Lie, J.


People v. Namowics
H052004